DAVID T. McKIM AND WILLIAM H. MARRIOTT, EXECUTORS OF JOHN McKIM, JR., *vs.* J. M. DUNCAN, ET. AL.— *June* 1846.

A testator by his last will declared, that neither of his executors should be entitled to any commissions for settling his estate, but that all necessary expenses relative to such settlement, should be charged to his estate. The orphans court allowed the executors a commission of six per centum. This was, however, cancelled by consent, and the question of commissions presented to that court *de novo,* when they decreed the executors were not entitled to any such allowance. HELD, upon appeal, that the executors were entitled to the commissions which had been previously allowed them.

McKim and Marriott, *vs.* Duncan, *et al.*—1846.

If the acts of Assembly of this State do not expressly grant to the orphans court, power to allow executors commissions in such cases as those mentioned in the testator's will, no commissions can be claimed by them.

The act of 1798, chap. 101, which declares that the commissions of an executor shall be, at the discretion of the court, not under five, nor exceeding ten per centum, on the amount of the inventory or inventories, excluding what is lost or has perished, and prescribes the manner in which the account of an executor must be made out, confers upon the orphans court the power in this, as it does in all other cases, to allow a commission.

A testator cannot take from the orphans court a power which the law gives it.

The will of a testator is to be regarded in the administration of his estate; but this general rule is to be taken with this proviso, that such will be not inconsistent with the law.

The 2nd sec., sub chap. 20, act of 1798, chap. 101, must be read in connexion with the 5th sec., 14th sub. chap. of the same act.

The first clause makes it the duty of the court in all cases to allow commissions to executors. The other makes one exception to that rule.

A testator is not permitted to deprive his executor of a commission of not less than five per centum, by bequeathing him, by way of compensation, any thing which shall appear to the court to be an insufficient compensation.

A person by undertaking the office of executor does not elect, and is not bound to give effect to all the provisions to be found in a will.

A testator cannot by his will prevent his executors from collecting and accounting for debts due his estate ; nor can he authorise any other person to receive it from his debtors.

A testator bequeathed to his three sons, to be equally divided between them, the whole of his capital used in his copper business, that may be standing to his credit after the payment of all debts and claims upon, or growing out of, that business. The capital in the copper company was returned by the executors in the schedule of debts due the deceased. HELD, that whether the testator was a partner of the firm engaged in the copper business with his sons, or only accommodated that firm, of which he was not a member, with a loan of money, could make no difference ; that the money due the testator was a part of his personal estate, payable only to his executors; and when paid, constituted a part of the assets in their hands, to be by them accounted for in their settlements with the orphans court.

A testator bequeathed to his son certain shares of stock theretofore transferred to him by his said son, who was also one of the executors of his father's will. HELD, that with the appraised value of such stock the executors must be charged, and it must be regarded as a part of his estate, and not the stock of its former owner, though there was no proof how the testator became the absolute owner.

Upon the last two items the executors were held to be entitled to commissions.

APPEAL from the Orphans Court of *Baltimore* county.

10      v.4

On the 15th March 1845, the appellees filed their petition before the said court, alleging, that on the 8th December 1841, *John McKim, Jr.*, made his last will; that he appointed his sons, *D. T.* and *John S.*, and his son-in-law, *W. H. M.*, executors thereof, and therein declared, that no one of his executors should be entitled to any commissions for settling his estate; that the testator died in the month of January 1842; that his son, *John S.*, renounced his appointment, and on 3rd February 1842, letters testamentary were granted to the appellants; that the executors settled three accounts with the said court, and claimed, and were allowed, in their *third* account, commissions to amount of $9418.57. And in their *fourth* account, $81.33; that the allowance of commissions to the executors being without notice to the appellees, they agreed to open the same, vacate the decree therefor, and that the subject matter of their claim thereto, might be again considered by the court. The petition then proceeded to set forth the interest of the appellees under the will, and the diminution of their devises by the allowance of commissions to the executors. The petition further alleged, that as to a sum of $99,025.88, the same never was received into possession by the executors; that the interest of the testator in a copper establishment, was one in property, credits, and effects, which the testator, at the date of his will, and at the time of his decease, held or was entitled to, in partnership with his two sons, *David T.* and *John S.;* that the same was charged to the executors in their *first account*, and in their *second account* the said charge was extinguished, by a credit for the whole amount.—And that the same, when charged in their *third account*, was in the same account credited in discharge; the only effect of the introduction of this item into the said *third account*, being, as respects your petitioners, to diminish the residue of the estate by an allowance of six per cent. commissions thereon; and that as respects the warehouse, charged and credited at $7000, in said *third account*, and also in respect of the two hundred and sixty-five shares, *Phœnix Shot Tower stock*, charged and credited in said *third account*, at $15,900;—the only effect of the introduction of these items into said account, was to increase the allow-

ance of commissions to said executors; that in respect of the sum of $6000, charged on the dwelling house and property in *Holliday* street, no commission, in any point of view, ought to be allowed. Prayer, for a settlement of a further account, &c.

The executors answered separately.

*David T. McKim's* answer claimed commissions, admitted that the question was still open, and among other matters alleged, that with regard to the capital of *John McKim, Jr., & Sons,* credited in the account of the executors, and on which commissions were charged, the same was the entire property of *John McKim, Jr.,* for which he annually was credited with interest. He alleged he would not have taken out letters testamentary, but for the opinion of the judges of the court, expressed before he took them out, that he would be entitled to commissions.

The answer of *W. H. Marriott,* also claimed commissions;—that he believes it was understood by all the representatives, before he took out letters, that commissions were to be allowed the executors; that he refused to undertake it, unless he was to be paid. The passage of the administration accounts, and allowance for commissions were admitted. That as to the item of $99,025.88, this respondent is advised, that the same is properly made liable to the commissions allowed by the said court, and stated in said accounts, because the same was a debt due to the estate of said testator, by said *David T. McKim,* and his brother, *John S. McKim,* the same having been loaned to them by the testator, who had no interest in the business in which the same was used, and for which it was loaned by him to his said sons not as a partner, but only as a friend and creditor.

With this answer was filed a letter from *J. M. Duncan,* one of the appellants, dated 11th May 1843, to said *Mariott,* which stated:

"I have not seen *Mr. Handy,* since the time I mentioned to you, that we met on the street; nor have I said to him anything on the subject of executor's fees, either *pro* or *con.* I had supposed that the commissions were to be charged by you, having expressed my opinion, that you were fairly entitled to a

remuneration for your labor, and believed that a paper had been drawn up and signed by the members of the family, coinciding with that opinion. Have you not such a paper duly signed? My impression was, that you possessed this paper, and therefore I feel surprised by your note, which seems to imply that you have it not.''

And also a declaration in writing, signed by said *W. H. M.*, filed in court, setting forth, '' that in accepting and qualifying for the execution of said trust, he reserves to himself the right to demand and receive, such commissions as the orphans court of *Baltimore* county may, in its discretion, allow.''

The appellees filed a general replication to the answers.

A commission was issued, and there was proof, that *John McKim, Jr.*, was not interested in the copper works, from the year 1839; that he received nothing from that concern after that period, but interest on his capital engaged in it.

A deed of mortgage from *D. T. McKim* to his father *J. McK., Jr.*, dated 1st May 1840, to secure the sum of $6900, was also filed in the cause.

A variety of accounts, taken from the books of the deceased, with his several children, were also proved.

By the last will and testament of the deceased, dated 8th December 1841, he bequeathed to his three sons, *David T.*, *John S., and Richard*, to be equally divided between them, '' the whole of my capital used in the copper business, that may be standing to my credit, after the payment of all debts and claims upon, or growing out of that business;'' and also the warehouse, in which that business was carried on.

The testator bequeathed to his son *David*, his dwelling house, '' which, however, I charge with the payment of the sum of $6000, to constitute a part of the residuum of his estate:'' his son to pay interest thereon.

He also bequeathed to his said son, two hundred and sixty-five shares of *Phœnix Shot Tower* stock, ''heretofore transferred to me as collateral security, by him.''

After various other devises to his children, and in trust for his grand-children, he devised a residuum of his estate, created from various specified sources, to amount of $60,608, in trust,

for his three daughters, for life, with remainders over; and all the residue of his estate to his six children, share and share alike.

The testator then declared, that neither of his said executors should be entitled to any commissions for settling his said estate, but all necessary expenses relative to such settlement, should be charged to his estate.

By a codicil, dated 10th December 1841, the testator revoked the devise of that portion of his estate, which he had bequeathed to his son *David;* and again devised the same to him in trust, for the sole use of his wife, &c., with power to sell, mortgage, &c., with remainder in trust for such of the child or children of the said *David,* or their descendants, as the said *David* may direct by, &c.

The *Shot Tower* stock was included, and valued in the inventory of the estate, at $60 per share; as were also all the stocks which the testator devised in trust for his grand-children.

The schedule of sperate and desperate debts, amounted to $123,117.74; of which *D. T. McK.* was alleged to be chargeable with $6000. The capital in the copper company, $99,025.85.

In the *first* account of the executors, they charged themselves—

With an inventory of the personal estate of the deceased, $44,959.51. This included the *Shot Tower* stock.

With a debt of *D. T. McKim,* for amount due by him to the deceased, $6000.

With the amount of the deceased's interest in the firm of *John McKim, Jr., & Sons,* as returned in the lists of debts, $99,025.85.

In their *second* account, they were credited with the item of $99,025.85, as prematurely, and erroniously brought on; the firm not being, as yet, settled.

In their *third* account, the last item was restored, and the executors were allowed commissions on $156,976.22, at 6 per cent., $9418.57. There were allowed, also, a credit of $15,900, for two hundred and sixty-five shares *Phœnix Shot Tower* stock, which was bequeathed to *David T. McKim,* in trust, &c.

The executors, from time to time, passed four other accounts.

After the agreement to open the accounts upon the subject of commissions, and that the orphans court might reconsider that subject, *de novo.*

That court, on the 15th March 1845, (KEMP, LEARY, and READEL, J.,) decreed that neither of the executors should be entitled to any commissions, and that the court have no power under the will, to award the same; and that the executors further account, and charge themselves with the commissions credited in the accounts heretofore passed, &c.

From that decree the executors appealed to this court.

It was agreed, that upon *this appeal* the mortgage from *D. T. McK.,* and *J. McK., Jr.,* should not be considered as a ground of claim against him.

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS, SPENCE, MAGRUDER and MARTIN, J.

By McMAHON and REVERDY JOHNSON for the appellants :

This is an appeal from a decree of the orphans court of *Baltimore* county, by which all commissions were disallowed the executors of *John McKim, Jr.,* deceased.

The facts of the case are as follows :—

The late *John McKim, Jr.,* departed this life, leaving a considerable property, both real and personal.   By his last will he appointed his sons, *David* and *John,* and his son-in-law, *Marriott,* his executors, and by that will he directed, that they should charge no commission for settling the estate; but that his estate should pay the necessary expenses.   By this will he gives no bequest, whatever, to *Marriott;* and none to *David,* except in trust for his wife and children; but to *John,* a large bequest and devise are made.   *John* renounced the executors of the will, and *Marriott* and *David,* after a probate filed with the orphans court, against the clause of the will prohibiting the charge of commission, took out letters testamentary upon said estate;—and before letters granted, the orphans court telling them, that commissions would be allowed, notwithstanding this clause in the will.

The executors settled three accounts, and the, then, orphans court, allowed them six per cent. commission, for their services in settling up the estate.

After such allowance made, some of the legatees of *John McKim, Jr.*, filed a petition, requiring the court to disallow all commissions; and if the court will not do so, to disallow commissions on certain items in the accounts of the executors. They, the executors, assenting to consider such allowances, as open for the consideration and judgment of the orphans court. One item, was a commission on the interest of the deceased in the copper works, in which *Mr. McKim* permitted his name to be used as a partner, and into which he had put a large capital, without any participation in the profits; and merely obtaining interest on the principal, so lent to such copper works, and which he bequeathed by his will. The legatees of such fund having received the amount of such bequest, gave release therefor.

There are also objections made to other items of credit for commissions.

The present orphans court disallowed every allowance for commissions, and from that judgment this appeal is taken.

The appellants will contend :

1. That the orphans court are authorised and required, under circumstances similar to the present, to allow commissions to executors, although by the will appointing them executors, the testator directs none to be charged.

2. That the various allowances of commissions, as made by the former orphans court, were correct and proper, and that upon the facts and circumstances stated in the case, they ought not to have been disturbed by the present orphans court.

By S. J. K. Handy and Nelson for the appellees, who insisted :—

1st. The authority to make a last will and testament of personal property, and to appoint an executor, is, by the common law of *England*, in force at the time of the settlement of *Maryland*, imported by our ancestors, incorporated into, and made a part of the laws of the State, and is not in virtue of any

act of Assembly; that executors and administrators, at common law are entitled to nothing, by way of compensation or commissions; that each testator, at common law, has the right to debar his executors from receiving commissions, the office of executor being one of private trust named by the testator, and not by the law.

2nd. There is a defect of authority in the several orphans courts, by act of Assembly, to allow commissions to executors against the declared intention of the testator, that his executors shall act without compensation or commissions; that the sound and true construction of the several acts of Assembly will exclude this case, as not within the meaning and intention of the legislature, leaving it to be governed as at common law; that the legislature intended, by the *5th sec., 14th sub. chap.,* of the *Act of* 1798, *chap.* 101, to embrace the case only, where testators desiring, and intending to compensate, give something by way of compensation, but give, in the opinion of the orphans courts, an insufficient compensation, repealing the law, *pro tanto,* as it existed prior to said act of Assembly:—this case comes not within the letter, nor within the meaning and the intention of said fifth section; nor is it embraced within the meaning and the intention, of the *2nd sec., 10th sub. chap.,* of the *Act of* 1798, *chap.* 101.

3rd. From the pleadings and the evidence in the cause, it appears, that the executors made no contract or agreement with the residuary legatees of their testator, to entitle them to an allowance of commissions against the prohibition of the will; but on the contrary, the executors took out letters, with the full understanding, that the residuary legatees refused to make any such agreement; that the appellants having voluntarily assumed the trust reposed in them by the testator, are bound to take the office of executor, with the condition imposed by the will, the testator intending, by excluding the allowance of commissions, that what would be allowed as such, without this inhibition, should fall into, and make a part of the residuum of his estate, made liable and charged by the will, to make up any deficiency in the legacies given to his daughters; that the sales of the real estate are inadequate to make up the legacies given

to his daughters; which makes a resort necessary, under the will, to the residue; and if commissions are allowed, the residue will be much exhausted, and the intention of the testator will be defeated, as respects his daughters; which intention ought to prevail.

4th. The appellants being members of the testator's family, he made them large advances from time to time, incurred responsibilities, and paid debts and liabilities for them, to a large amount; and shortly previous to his death, relinquished and cancelled valid debts due by each of them to him, which would otherwise have made part of the personal estate; the testator nominated and appointed them, the executors of his last will, with the belief, and the full understanding, that they would perform the trust reposed in them by the will, on the terms specified, to which appointment they did not object in his lifetime, although they had knowledge of such appointment, at or about the time of making said will; and more especially, as both executors take beneficially by the will, they are bound by its terms and provisions, and *ex æquo et bono*, are not entitled to claim commissions, they having contracted and agreed to act without commissions, by the acceptance of the office of executors, under and by virtue of the will.

5th. The codicil to this last will and testament, made *two days* after the will, as disclosed by the evidence in the cause, is in the handwriting of *David T. McKim*, one of the executors and legatees, and was signed and attested at the instance, and at the request of said executor and legatee, and it is not competent for said executor and legatee now to set up the defence, that he takes nothing by the will, even if the fact were so, but he is estopped and precluded from objecting to the codicil of said will, and is as much bound to act without commissions as executor, as if the codicil had not been made.

6th. *David T. McKim* waived all claim to commissions anterior to taking out letters testamentary on his father's estate; he also refused to make any agreement to allow commissions to his co-executor, *Wm. H. Marriott*, and therefore, in no aspect of this case, can he rightfully and legally claim the allowance of commissions; and as both executors entered

11 v. 4

on the performance of the trust reposed in them by the will, with full knowledge of the opposition to have commissions allowed contrary to the intention of the testator, and of the conditions annexed to the trust, they have no right to complain, and that both executors, under all the circumstances surrounding this case, ought to have no allowance of commissions made them by the orphans court, against the general, and the particular intent of the will.

7th. The claim made by said *David*, independently of his waiver of claim to commissions, is inadmissible, inasmuch as the evidence in the cause offered by the executors, discloses the facts, that he, *David T. McKim*, has elected to take the legacies and benefits given him by his father's will and codicil; and has assumed the trusts, for the grand-children, created by the will, and also the peculiar and special trust created by the codicil, and therefore he is bound to give effect to the whole will, and is not entitled to commissions.

8th. That under no aspect of this case, ought the executors to be allowed commissions on the sum of $99,025.88, returned by them as a debt due to the separate estate of the testator, by *David T. McKim*, and *John S. McKim*, the surviving partners of *John McKim, Jr., & Sons*, and charged and credited as such, in their *first*, *second*, and *third* accounts, because by the death of *Mr. McKim*, the senior partner, the whole partnership property and business, devolved by law on his surviving partners, whose duty it was, as surviving partners, to settle up the said copartnership business; that the appointment of *David*, as one of the executors, he being a copartner, does not entitle him to claim commissions out of the separate estate of his testator, for winding up the copartnership business after his father's death, nor is his co-executor, *Marriott*, entitled to claim commissions on this item; nor ought commissions to be allowed on the sum of $15,900, the value of two hundred and sixty-five shares of *Phœnix Shot Tower* stock, given and released by the will to *David*, it having been held by the testator as collateral security only, at the time of his death; nor ought any commissions to be allowed on $6000, a debt charged on the dwelling house devised to *David*, and returned by executors, as a debt due by said *D. T. McKim*, as executor.

9th. Commissions ought not to be allowed the executors on the sum and item of $99,025.85, returned by them in their list of debts, as "the amount of capital of late *John McKim, Jr.*, in copper company, due by *David T. McKim* and *John S. McKim*, surviving partners of *John McKim, Jr., & Sons;*" and charged by executors in their first administration account, as "being the amount of deceased's interest in the firm of *John McKim, Jr., & Sons*, as returned in their lists of debts due the deceased," and which item and sum of money was extinguished by a credit and allowance in their *second* administration account; the executors alleging in said account, that they had "*prematurely* and *erroneously* charged themselves with said item in their last account, the firm of *John McKim, Jr., & Sons*, not being settled up;"—and which item was again charged and credited in their *third* account: because the evidence shows, that the executors never reduced said item and sum of money, or any part thereof, into their possession as executors, nor was the same ever paid over to them as executors, by the surviving partners of *John McKim, Jr., & Sons;* but on the contrary, the said business and firm was conducted after the death of *John McKim, Jr.*, by his surviving partners, who wound up the said business and firm, paid the debts of said copartnership, and divided the profits and capital of said copartnership business amongst themselves. And commissions ought not to be allowed on the sum of $7000, the appraised value of warehouse at the corner of *Frederick* and *Pratt* streets, where the copper business was conducted by *John McKim, Jr., & Sons*.

MAGRUDER, J., delivered the opinion of this court.

The will of the late *John McKim, junior*, gives rise to this controversy, and the first and principal question is, are the persons to whom letters testamentary were granted, and who have administered the assets, entitled to receive any remuneration for the services they have rendered?

It will be assumed in this case, that if our act of Assembly of 1798, ch. 101, does not expressly grant to the orphans court, the power to allow to the executors of *Mr. McKim* a com-

mission for their services, no commission can be claimed by them.  But surely a law, which, in prescribing the manner in which the account of an executor must be made out, has these words:  "His commission, which shall be, (at the discretion of the court,) not under five per cent., nor exceeding ten per cent., on the amount of the inventory or inventories, excluding what is lost or has perished," confers upon the orphans court the power in this, as it does in all other cases, to allow a commission.  The question then is, can the testator take from the court the power which the law gives to it, and which is conferred in language, which makes it their duty to allow not less than five per centum?

The will of Mr. McKim, in one of its clauses, appoints David T. McKim, John S. McKim, and William H. Marriott, the executors; and afterwards it is added: "I do hereby declare it as my will and intention, that neither of my said executors shall be entitled to any commissions for settling my estate, but all necessary expenses relative to such settlement, shall be charged to my estate."  John declined, the others obtained letters testamentary, and now claim the commission.  Is the above clause in the will a bar to the claim?

It must be conceded, that the act of Assembly no where gives to a testator the power which this testator attempted to exercise.  It is true, that the will of the testator is to be regarded in the administration of his estate, but this general rule is to be taken with this proviso, that such will be not inconsistent with the law.  That this provision of the will is inconsistent with the law, must be obvious upon an examination of the act of 1798, especially if the 2nd sect. of sub. chap. 20, be read in connection with the 5th sect. of sub. ch. 14.   The first clause makes it the duty of the court, in all cases, to make an allowance; the other makes one single exception, and this case cannot be brought within that exception.   To defeat a claim founded upon sub. ch. 20, sect. 2, because of this clause in the will, there must be found a law which gives to the testator a power to repeal the act of 1798, so far as it directs the manner in which the accounts to be passed by his executors are to be made out; a law which directs the commission to be allowed,

*unless the testator shall otherwise direct.* The testator is not permitted to deprive his executor of a commission of not less than five per centum, even by bequeathing to him, "by way of compensation," any thing which shall appear to the court to be insufficient compensation. Surely, if he cannot take from the court its power to allow the executor ten per centum upon the amount of the inventory, by giving to him a less sum than the law authorises the court to allow, and which the court believes to be sufficient, he cannot, by forbidding any allow-ance whatever to be made, deprive the court of the power which the law says it shall exercise in all cases, with but one exception, and that exception not embracing this case. The court may allow more, although the will gives *eight* per centum, (thus disregarding such a provision in the will.) Surely its power is not to be taken away by a clause of the will, which allows to the executor nothing.

A person, by undertaking the office of executor, does not *elect*, and is not bound to give effect to all the provisions to be found in the will. Such clauses as are inconsistent with the law which the executor is to obey, are of no validity, and con-stitute no part of the will.

It is not believed, that the record furnishes testimony, that the executors agreed to release any commission to which the law might entitle them. The agreement spoken of might not have been executed, because, after the opinion expressed by the court, or one of its judges, it was not deemed of importance to obtain an agreement, in regard to the executor's commission, on an estate in which three married ladies were principally in-terested. Indeed, one of the executors seems to have taken quite unreasonable pains, to let it be distinctly understood by all who are concerned in the estate, that he had a will in regard to the commission, inconsistent with that of the testator, and that the law should settle the question between them.

The opinion of this court then is, that in this case, and not-withstanding the provision of the will, the executors were entitled to the commission which had been previously allowed to them.

The petition filed by the appellees, besides insisting that no commission was to be allowed to the executors, also charges, that commissions had been improperly allowed upon particular sums of money.   Upon these questions, the court below could express no opinion, because, in its judgment, it had no legal power to make any allowance when the will forbids it.   Differing in opinion with the court below on this question, it is our duty to direct what shall be the decree in the premises.

The first objection is, to commission allowed on a sum of money returned by the executors as a debt, due the deceased by *David T. McKim* and *John S. McKim,* surviving partners of *John McKim, junior.*   It can make no difference, in deciding this question, whether the testator was a partner of the firm, or accommodated that firm, of which he was not a member, with a loan of so much money.   The money was unquestionably a part of his personal estate, payable only to the executors, and when paid to them, constituted a part of the assets in their hands to be by them accounted for in their settlements in the orphans court.   The testator could not, by his will, prevent the executors from collecting and accounting for this portion of his estate, or authorise any other person to receive it from the debtors.

It can be no objection, to the commission allowed on the appraised value of two hundred and sixty-five shares of *Phœnix shot tower* stock, that it was transferred to testator by one of the executors, "as collateral security."   While the executors are charged with the appraised value of this stock, it must be regarded as a part of his estate.   It cannot be regarded as the stock of its former owner, although we are not told when or how the testator became the absolute owner of it.

We are of the opinion, then, that the executors were rightfully allowed a commission on these two sums of money.

We are also of opinion, with respect to the $6000, that they are not assets, upon which a commission is to be allowed by the orphans court.

JUDGMENT REVERSED, &c.