MAYOR AND CITY COUNCIL OF BALTIMORE
*v.* FERDINAND C. LINK, ADMINISTRATOR
[No. 28, January Term, 1938.]

*Decided March 10th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Allen A. Davis* and *Hector J. Ciotti, Assistant City Solicitors,* with whom was *R. E. Lee Marshall, City Solicitor,* on the brief, for the appellants.

*Edward J. Colgan, Jr.,* with whom was *Richard M. Carlin* on the brief, for the appellee.

SHEHAN, J., delivered the opinion of the Court.

This is an appeal from an order of the Orphans' Court of Baltimore City allowing to William Purnell Hall $4,500 for professional services rendered to Ferdinand C. Link, administrator of the estate of Joseph Truszkowski, deceased.

The deceased left approximately $17,000 in cash, a leasehold property which was sold for $435, and some small personal effects of the value of $20. This large sum of money was secreted in various places in the house in which he had lived for many years and conducted his trade as a cobbler. He died intestate, without known heirs or next of kin. Dr. Ferdinand C. Link, a coroner, of Baltimore City, was appointed administrator *ad colligendum* and, subsequently, was appointed administrator. The cash had been discovered and cared for by the police authorities, and turned over in kind to the administrator and deposited by him in three banks of Baltimore City. More than fifty persons appeared and claimed to be related to the deceased, and, as such, asserted interests in the distribution of the estate. Among these claimants were a woman and a child alleging that they were the widow and heir of the deceased, and the Mayor and Council of Baltimore City, claiming distribution of the estate on the part of its school board, under the statutory provisions contained in Public Local Laws, art. 4, secs. 808 to 812, Baltimore City Charter, 1927.

With this situation confronting the administrator, he employed, without an order of the Orphans' Court, Mr. Hall to represent him as his attorney in connection with the administration of the estate. Substantially the entire estate was in the hands of, or available to, the administrator, at the time of his employment; consequently, there was no service to be rendered in connection with the recovery of any part of the property; therefore, his duties were confined to the preservation of the estate against spoliation, and the conversion into cash of the small leasehold property and some articles of personal property of little value. There were no debts to be collected, and only one account, except for funeral expenses, was presented to the administrator for payment. This claim of $780 was thought to be illegal, and was successfully disputed by Mr. Hall, representing the administrator, and disallowed by the court. It is claimed that he rendered valuable service in the selection of the three depositories for the cash in the administrator's hands, and thereby protected the estate from delays and losses occasioned many depositors by the closing and failure of numerous banks at the time of the great depression. For a period of about three and one-half years he acted for the administrator, who accepted his services and recommended the payment of the fee of $4,500. The services rendered are set forth in detail in the petition and in testimony taken to substantiate the claim, but, with the exception of those above mentioned, and some minor activities, the services only related to the controversies between the numerous claimants with respect to their relationship to the deceased and their alleged rights in the distribution of his estate.

The real contest was between numerous claimants, on the one part, and the Mayor and City Council of Baltimore, on the other. With respect to the contentions of these claimants, issues were framed and sent by the Orphans' Court to a court of law, and, in their trial, Mr. Hall actively participated, together with the city solicitor. All of the claims of pretended relations were disallowed

and, consequently, the Board of School Commissioners of `Baltimore City became entitled to the estate and, being so entitled, the Mayor and City Council of Baltimore oppose the allowance of the fee of $4,500, and, from an order of the Orphans' Court allowing the same, this appeal is taken.

The appellant claims these services were not rendered in connection with issues between the estate and others in recovering or protecting any part of the estate, but only *inter partes,* with respect to those claiming interests in the distribution. The nature and character of the services are the tests to determine whether money can be withdrawn from the estate to pay for them or any part of them.

The orphans' court may allow, under its statutory authority, counsel fees in proper cases (*Carson v. Phelps,* 40 Md. 73, 102), and the amount of such compensation is largely in the discretion of the orphans' court, but this discretion has its limitations in statutory enactments and in well defined principles of law, stated in many decided cases. This court may review the action of the orphans' court, in allowing fees; first, as to the authority to make such allowance in the particular case; and, second, as to the reasonableness of the fee allowed. It is said in *Miller v. Gehr,* 91 Md. 709, at page 717, 47 A. 1032, 1034: "Although the statute does authorize the orphans' court to allow the costs and extraordinary expenses 'which the court may think proper to allow,' its action can be reviewed by this court as to the reasonableness of the allowance." See, also, *Maynadier v. Armstrong,* 98, Md. 175, 180, 56 A. 357. By the express terms of the above statute, services for which compensation may be allowed are limited to those required for recovery of any part of the estate not in hand, or for the security of any part of the estate in hand, and, unless the services rendered are confined to these two purposes, a fee cannot be allowed, because the express terms of the statute, contained in article 93, section 5 of the Annotated Code, as amended by Laws 1935, ch. 483, are "for costs

and extraordinary expenses (not personal) which the Court may think proper to allow, laid out in the recovery or security of any part of the estate."

The services here did not lie in the recovery of property, as above pointed out. Then, if the fee allowed is to stand, it must have been in connection with the security or preservation of the estate, or as said in *Koenig v. Ward,* 104 Md. 564, 65 A. 345, 346, "to protect it from spoliation." It is contended that spoliation means "to plunder; to rob" (58 C. J. 1304), and that the claims presented could not be so characterized, when the claimants were at the bar of the court, represented by counsel, and in an orderly legal proceeding asserting their rights in the distribution, and that in itself does not constitute spoliation.

All of them were contending for a share of or all of the estate, as distributees, and none of them were claiming as creditors. The administrator, in effect, was a stakeholder, awaiting the result of these contests and ready to pay to the one or more adjudged to be entitled to the property. This court has said, in *Koenig v. Ward, supra,* 104 Md. 564, at page 566, 65 A. 345, 346, "The practical question litigated and settled under the caveat was one of distributive right; i. e., whether the estate should be divided between the beneficiaries under the will or the heirs at law and distributees of the decedent. It was not an issue between the estate and third parties, but one *inter partes,* those claiming to be interested in its distribution. Under these circumstances the orphans' court had no authority to allow the counsel fees to be paid out of the estate." The same question is presented in the case at bar, although it arises under a different state of facts; the objects sought are the same; the establishment or determination of who were the rightful distributees, and the same rule should be applied, when that is the question involved, whether the claimants be many of few, or on whatever relationships the claims are based. In the case of *Mudge v. Mudge,* 155 Md. 1, 141 A. 396, 397, this court reversed the action of the orphans' court

in allowing a fee to the solicitor of a granddaughter who filed a petition in equity for the construction of her grandfather's will. This relative claimed that under a proper construction of the will she would be entitled to $5,000 more than the executor thought the will gave to her. The court held that she was entitled to the additional $5,000, but, nevertheless, it was decided by this court that the fee was improperly allowed, and held that the estate of a deceased can be charged with attorney's fees only, "where the services are rendered in the recovery or security of the whole or some part of the estate. To be allowable, the services of the attorney, for whom a fee is asked, should in some way be beneficial to the estate, either by the enlargement or the protection of it, and not where the only question to be decided is to whom the estate, or any part of it, shall go and in what proportions. *Dalrymple v. Gamble,* 68 Md. 156, 11 A. 718; *Gorton v. Perkins,* 63 Md. 589, 3 A. 291; *Koenig v. Ward,* 104 Md. 564, 65 A. 345; *Compton v. Barnes,* 4 Gill 55; *Miller's Equity Proc.* 671." This court further stated in that case: "The purpose and effort of the appellee 'was not to recover the estate or to protect it from spoliation,' but to determine the amount that should be distributed to her. It was solely a question of distributive right. Whatever the result might have been, the estate would in no way have been benefited thereby. It is solely an issue between the appellee as legatee and the appellant as residuary devisee. This being so the orphans' court had no power or authority to allow a counsel fee out of the corpus of the estate." Precisely the same question is presented in the case at bar, between the School Board of Baltimore City and the numerous claimants, all claiming as distributees.

It seems to us that the above language is equally applicable to this case, as to that case. Whatever the determination might have been with respect to these claimants and to the right that they were asserting, the estate would not have been augmented or diminished by one dollar. The estate for distribution would have been

the same in either event. The claimant who won was benefited, but the estate, in itself, was not. If the alleged widow or daughter had been successful, they would have received the entire net estate, and that is exactly what the Board of School Commissioners will receive. The pronouncement in *Mudge v. Mudge, supra,* is in effect only a reiteration of the language in *Koenig v. Ward, supra,* 104 Md. 564, at page 566, 65 A. 345, but these and other cases there cited clearly show that, regardless of the character of the litigation, if the issue involves the rights of alleged distributees and not the augmentation of the estate or its protection from spoliation, then the orphans' court, in its limited statutory jurisdiction, is not authorized to allow counsel fees. The construction placed upon this statute in *Mudge v. Mudge, supra,* and *Koenig v. Ward, supra,* is conclusive as to the rights of the parties to this case.

We can arrive at no other conclusion but that the order of the orphans' court should be reversed as to any fees allowed, except in connection with the claim against the estate for the comparatively small amount of $780, and any other services relating to the recovery or security of any part of the estate and entirely apart from that concerning the claims of the numerous alleged relatives and also that of the School Board.

> *Order reversed, case remanded for a further order in conformity with this opinion, with costs to appellant.*