# AMERICAN JEWISH JOINT DISTRIBUTION COMMITTEE *v.* EISENBERG, EXECUTOR

[No. 48, October Term, 1949.]

194

*Decided December 15, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Clarence Lippel,* with whom were *Eli Rock* and *David Kauffman* on the brief, for the appellant.

*D. Lindley Sloan* and *William L. Wilson, Jr.,* with whom was *Edward J. Ryan* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

These two appeals were taken by American Jewish Joint Distribution Committee from orders passed by the Orphans' Court of Allegany County in the estate of Martha W. Stern, deceased.

Miss Stern, a resident of Frostburg, died on October 4, 1946, leaving an estate appraised at $250,404.59. By her will she made specific pecuniary bequests totaling $98,500 and gave the residue of her estate to appellant. She appointed Loraine Eisenberg, appellee, her executor and directed that he be allowed 3 per cent as commission for his service.

The executor, in his first administration account filed November 4, 1947, allowed himself 3 per cent commission on $95,000. In his second account filed in March, 1949, he allowed himself 3 per cent commission on 56,680.42, and also allowed his attorney, Edward J. Ryan, a counsel fee of $4,000. When appellant's attorney informed Mr. Ryan that he considered a fee of $4,000 excessive, Mr. Ryan replied that he intended to ask for $6,000 more in a later account. Appellant thereupon filed exceptions to the second account, alleging that the commission on any amount after the first $20,000 of the estate should not exceed the statutory limit of 2 per cent, and that the counsel fee was excessive.

On April 29, 1949, the Court dismissed the exceptions and allowed the executor 3 per cent commission on the entire estate, and authorized a counsel fee of $10,000 for services rendered by the executor's attorney up to that time. The first appeal is from that order.

The first question on the first appeal is whether the direction in the will that the executor be allowed 3 per cent as commission for his service authorizes the Or-

phans' Court to allow such commission in excess of the maximum statutory limit. The Testamentary Act provides that the commissions, which shall be at the discretion of the Court, shall be not under 2 per cent nor exceeding 10 per cent on the first $20,000 of the estate, and on the balance of the estate not more than 2 per cent. Code 1939, art. 93, sec. 5. While it is not within the province of the Court of Appeals to review the commissions of executors and administrators as fixed by the Orphans' Court within the limits prescribed by the statute, this Court may review a decision of the Orphans' Court which transcends its limited power in this respect. *Newton v. Johnson,* 173 Md. 166, 169, 195 A. 312; *Cearfoss v. Snyder,* 182 Md. 565, 568, 35 A. 2d 235. The determination of the amount of commissions of executors and administrators is entirely within the discretion of the Orphans' Court, except that the exercise of discretion is limited between the amounts fixed by the statute as minimum and maximum commissions. *Dalrymple v. Gamble,* 68 Md. 156, 11 A. 718; In *re Watts' Estate,* 108 Md. 696, 701, 71 A. 316. We have held in a number of cases that a testator cannot by any provision of his will deprive his executor of the commissions allowed by the statute, for such a privilege would have the effect of repealing the statute. *McKim v. Duncan,* 4 Gill 72, 85; State, to Use of *Manning v. Baker,* 8 Md. 44, 49; *Handy v. Collins,* 60 Md. 229, 45 Am. Rep. 725; *Schloss v. Rives,* 162 Md. 346, 351, 159 A. 745. However, there is nothing in any of these cases that suggests that a testator cannot give his executor more than the maximum commissions allowed by the Statute. In *Handy v. Collins,* 60 Md. 229, 232, 45 Am. Rep. 725, the Court's language is that a testator "cannot deprive the executor of such commissions, nor cut them down, nor take away the discretion vested in the Orphans' Court." We hold that a testator has the right to leave his property as he sees fit, and hence the statute does not prevent him from leaving to his executor more than the statutory commissions, either in the form of a bequest or by means of larger commis-

sions than are allowed by the statute. Compare *Schloss v. Rives, supra.*

The second question is whether the Orphans' Court was justified in allowing a counsel fee of $10,000. Prior to 1937 there was no provision in the Testamentary Act authorizing in express terms the allowance of counsel fees by the Orphans' Court. The Act authorized an allowance for "costs and extraordinary expenses (not personal) which the Court may think proper to allow, laid out in the recovery or security of any part of the estate." Code Supp. 1935, art. 93, sec. 5. It was under this general statutory provision that counsel fees were allowed out of estates. This Court held that under the explicit language of the statute, counsel fees could be allowed out of an estate only for services which were in some way beneficial to the estate either by the enlargement or protection of it. *Mudge v. Mudge,* 155 Md. 1, 141 A. 396; *City of Baltimore v. Link,* 174 Md. 111, 114, 197 A. 801. The statute has been twice amended by providing expressly for allowance of counsel fees. In 1937 the Legislature provided that for legal services rendered to an estate by an attorney, the Orphans' Court may, on the attorney's own petition, allow him such sums as it may deem reasonable as an expense in the administration account. Laws of 1937, ch. 441, Code 1939, art. 93, sec. 7. In 1939 the Legislature amended the statute by providing that the administrator's costs may include "reasonable fees for legal services rendered upon any matter in connection with the administration or distribution of the estate in respect to which the Court may believe legal services proper." Laws of 1939, ch. 511, Code 1939, art. 93, sec. 5. However, it cannot be supposed that the Legislature, if it had the power, intended that counsel fees shall be allowed for services not rendered to the estate, or for services for which some one else has been paid, e.g., the preparation of Federal estate tax return or non-professional services which the executor is required to perform and for which he receives commissions. Moreover, it is well settled that the Orphans'

Court, in allowing counsel fees, must exercise sound judgment and discretion, and from a breach of discretion an appeal will lie to the Court of Appeals. *Sullivan v. Doyle,* 193 Md. 421, 431, 67 A. 2d 246, 250.

Canon 12 of the Canons of Professional Ethics, which were adopted by the American Bar Association in 1908 and by the Maryland State Bar Association on June 25, 1948, provides: "In fixing fees, lawyers should avoid charges which overestimate their advice and services, as well as those which undervalue them. * * * In determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client."

We accept this Canon as a guide, and we also reaffirm the rule that the principal elements to be considered in determining the reasonableness of counsel fees are the amount involved, the character and extent of the services, the time employed, the importance of the question, and the fidelity and diligence of the attorney. *Knapp v. Knapp,* 151 Md. 126, 134 A. 24.

According to the Minimum Fee Schedule of the Allegany County Bar Association, the counsel fee for the executor's attorney in this case should be $1,550, but it is thoroughly understood that this schedule lists only minimum fees and serves merely as a guide in determining the reasonable value of the attorney's services.

Canon 12 provides: "In determining the customary charges of the Bar for similar services, it is proper for a lawyer to consider a schedule of minimum fees adopted by a Bar Association, but no lawyer should permit himself to be controlled thereby or to follow it as his sole guide in determining the amount of his fee."

In the instant case the attorney's services included (1) advice in reference to securities, real estate, contracts, open accounts, and distraints; (2) services in determining the Federal estate tax, including trips to Baltimore and Washington to confer with officials of the Internal Revenue Bureau; (3) preparation of deeds, advertisements and reports of sales; (4) advice in reference to the status of the American Jewish Joint Distribution Committee as a charitable corporation, and preparation of suit in the United States District Court to determine the amount of the Federal estate tax; and (5) preparation of suit in the Circuit Court for Allegany County to determine the source of payment of collateral inheritance taxes.

We agree with appellant that the attorney was not called upon to display any extraordinary ability or skill in advising the executor concerning the securities and other matters and in preparing deeds and other legal papers. The legal advice was given on routine matters such as constantly arise in the course of the settlement of estates. We also take occasion to say that the executor paid out of the estate the sum of $1,000 to his secretary for "bookkeeping and secretarial services," and the additional sum of $1,536.50 to a number of persons for "legal, accounting, secretarial, stenographic and clerical services." We think it appropriate to observe in this connection that some of these payments were made for services which are commonly performed by lawyers, notably the preparation of the Federal estate tax return.

It was further pointed out that there could be no question of the status of American Jewish Joint Distribution Committee, residuary legatee, as a charitable corporation, contributions to which are deductible for purposes

of taxation. This agency has been ruled by the Internal Revenue Bureau as a charitable corporation, as shown by a list of charitable corporations published by the United States Government. It was explained that the American Jewish Joint Distribution Committee and the United Palestine Appeal created the United Jewish Appeal for the purpose of raising funds to be distributed among these two organizations and a third organization known as United Service for New Americans. But, as appellant said, it was perfectly clear that the residuum of the estate was intended for appellant and for no other organization.

For the reasons stated, we are of the opinion that the Orphans' Court should not allow the attorney in this case more than $4,000 as counsel fee for the services he has rendered the estate. We are convinced that if the executor should wish to pay his attorney more than this amount, he should make any such additional payment out of his personal funds.

The second appeal was taken from an order passed on May 31, 1949, authorizing the executor to engage Hon. D. Lindley Sloan as special attorney for the executor to defend the appeal which was taken from the order of April 29, and reciting that the Court "will later pass an order determining the fee to be allowed for such services." As the Court has not passed any final order authorizing the executor to pay any amount out of the estate as counsel fee for the special attorney, the second appeal must be dismissed.

*Order of April 29, 1949, affirmed in part and reversed in part, and appeal from order of May 31, 1949, dismissed, and case remanded for further proceedings, the costs to be paid by Loraine Eisenberg individually.*