536 A.2d 1187

**Dorothy R. BRODIE and Grace E. Emert, co-personal Representatives of the Estate of Arthur Maupin**

v.

**Nancy J. SNIDER, co-personal Representative of the Estate of Arthur Maupin.**

**No. 764 Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Feb. 9, 1988.

Jerome C. Schaefer (Hanson, O'Brien, Birney and Butler, on the brief, for appellant, Dorothy R. Brodie), Rockville.

Mark E. Maier (Miller S. Redden, P.A., on the brief, for appellant, Grace Emert), Rockville.

Murray L. Deutchman, Rockville, for appellee.

Argued before WILNER, WENNER and POLLITT, JJ.

WILNER, Judge.

Arthur Ray Maupin died on April 15, 1980, leaving an estate valued in excess of $2,000,000. He also left a Will and a codicil to that Will in which he named his three daughters, Dorothy Brodie, Grace Emert, and Nancy Snider, as co-personal representatives and residuary beneficiaries. The Will further provided that "in all decisions respecting the administration of my estate, the agreement of any two of my named Personal Representatives" would bind all three co-personal representatives.

The relationship between the three sisters, at least with respect to the administration of the estate, was anything but harmonious. It seems that appellants, Drs. Brodie and Emert, were generally of one view and that Mrs. Snider was of another. This became apparent almost from the beginning. Ten days after her father died, Mrs. Snider filed a Petition for Construction of Will in the Orphans' Court for Montgomery County in which she requested, among other relief, that the court require a unanimous vote of the personal representatives in order to bind the estate. The court denied the request, construing the Will to mean that "all decisions respecting the administration of the

estate, including the selection of estate counsel, shall be made by any two of the three named personal representatives and shall be binding on all personal representatives alike." In the same decree the court admitted both the Will and its codicil to Judicial Probate.

In July, 1980, over Mrs. Snider's objection, appellants chose estate counsel to handle the details of administration. Mrs. Snider objected to the choice of counsel and refused to sign the fee agreement between the estate and estate counsel although she did agree to an estimation of attorneys' fees for federal estate tax purposes. In furtherance of their general view as to how the estate should be administered, Drs. Brodie and Emert formally agreed to waive their rights to a personal representative's commission, this decision apparently being premised on the belief that (1) counsel would do most, if not all, of the work, (2) his fees would approximate the maximum allowable commissions, and (3) for tax reasons they preferred to take as legatees rather than as personal representatives. Mrs. Snider did not share that view and so refused to agree to or to sign the waiver of commissions. At a meeting of personal representatives held on December 30, 1980, she made clear that she would request a commission for her services.

The estate filed a Federal Estate Tax Return, signed by all three sisters, in February, 1981. On a separate schedule of the return it was estimated that attorneys' fees would total $120,000, the estimated amount agreed upon by the sisters. There was no amount listed for "personal representative commissions," however, even though estate counsel had attempted to persuade Mrs. Snider to form some estimate of the amount of commission she intended to claim.

As the estate plodded its way through the Orphans' Court, Mrs. Snider continued to disagree with her sisters, refusing to sign checks, contesting petitions for attorneys' fees, and petitioning the court to order certain actions. In February, 1984, the estate filed a "protective claim" with the Internal Revenue Service for a refund of $90,000 of the estate taxes paid three years earlier. In October, 1986, the

estate filed another claim for a refund in the principal amount of $61,472 plus $59,154 of interest through November 30, 1986. By virtue of that claim, the estate actually sought only $61,000 of the $90,000 requested in the protective claim.

On December 16, 1986, nearly 6½ years after the Will was admitted to Judicial Probate and almost six years from the filing of the original Federal Estate Tax Return, Mrs. Snider petitioned the Orphans' Court for an "Allowance of Personal Representatives Commission" in the amount of $60,000. This sum included both compensation for the "thousands of hours" which she claimed to have spent in administering the estate and reimbursement for costs incurred as a personal representative. In her petition appellee asserted that the $60,000 could "now be claimed without adversely affecting the amount available for distribution to the residuary legatees."

In separate answers, Drs. Brodie and Emert opposed appellee's petition for various reasons, including claims that (1) the costs incurred by appellee were for her own benefit rather than for estate purposes, (2) her actions caused much of the expense of administering the estate, (3) it would be inequitable to give a commission to only one representative, and (4) granting appellee a commission would cause the total fees to exceed the statutory maximum.

The Orphans' Court held a hearing on the petition on March 3, 1987, prior to ratification of the Thirteenth and Final Account which would have led to a final distribution of $144,000 to each sister. During the hearing, Mrs. Snider's counsel claimed that the $60,000 commission would not cost either the estate or the other two sisters anything. Appellee's counsel asserted that the entire commission would come from any refund of estate taxes, plus interest, which would be generated by an additional $60,000 administrative expense deduction. Although the proposal was a bit vague, from the colloquy between counsel it appeared to envision each of the sisters receiving the $144,000 called for by the Thirteenth Account, but for Mrs. Snider to regard

$60,000 of the amount paid to her as a commission rather than as a distribution. She would then file an amended return showing an additional $60,000 administrative expense deduction, which, she contended, would generate, along with interest, close to $60,000 in refunds. Presumably, though not so stated by counsel, Mrs. Snider would then designate the entire refund as a distribution.[1] Counsel finally stated that Mrs. Snider would sign a stipulation which protected the other personal representatives and limit Mrs. Snider's commission to that which she could collect from the federal government.

In reality Mrs. Snider's plan was somewhat different. After the court granted her the requested commission of $60,000, Mrs. Snider signed a stipulation which stated, in relevant part:

"[I]f awarded commissions, that no part of the commission which Snider may receive shall be paid out of Estate assets currently available for distribution to the residuary legatees. The entire commission is to be paid out of Federal Estate tax refunds or rebates, and accrued interest thereon, which may be received from the Internal Revenue Service as a direct result of the award of commissions in this Estate by the Court as requested. Any refunds received from any pending requests for refunds

---

1. The actual colloquy concerning the form of the proposal was as follows:

"MR. DEUTCHMAN [Counsel for Mrs. Snider]: Mrs. Snider has indicated that they are even prepared not to reduce the distribution to the three heirs—the other two heirs, rather. Let them have their $140,000 apiece that they would get anyway, let her take her commission, which is awarded by this Court, out of the money we get back from IRS that we wouldn't otherwise get back.
MR. BIXLER [Estate counsel]: That is all right. We can try that.
MR. DEUTCHMAN: So that if she loses, they get nothing less.
MR. BIXLER: If I understand, again what Mr. Deutchman is saying is based on the 13th and final account. Each one of the remaindermen, except Mrs. Snider, the other two get $144,000, Mrs. Snider gets $144,000 less $60–. Is that correct?
MR. DEUTCHMAN: That is correct, and then that $60,000 we deem as an order of this Court to be a commission awarded by this Court."

or commissions shall be distributed as part of the residuary Estate and not be deemed available to Snider for use in satisfaction of the commission award. Should any tax refund or rebate received as a direct result of the award of the commission not be sufficient to cover the entire commission being awarded by the Court, then Snider will forgive and waive the difference between any refunds received and the full amount of the award and will make no claim against the Estate, the Personal Representatives, the Attorney for the Estate or the residuary legatees for any unpaid portion of the said commission."

She further stipulated that she would bear all of the expenses involved in seeking a refund and would indemnify the estate, estate counsel, and the legatees and personal representatives against any IRS claims resulting from her claim. Thus, it is clear from the stipulation and from the statements of her attorney during the hearing that Mrs. Snider really intended to take her $144,000 distribution as a distribution and that her $60,000 commission would come from any refund generated by an additional $60,000 deduction. It was the refund, then, which would constitute the commission, *not* any part of the final distribution.

Estate counsel claimed that such a scheme would not work and that, even if it did succeed, Mrs. Snider could only collect $30,000—the difference between what the estate was currently claiming ($60,000) and the amount of the protective claim ($90,000).

Despite estate counsel's concerns, the court, believing that it could finally settle the estate after almost seven years from the death of the decedent, signed an order on March 24, 1987, awarding a $60,000 commission to Mrs. Snider, pursuant to the stipulation. Mrs. Snider signed and filed the stipulation but the two other representatives objected to the award and have appealed from that order.

■ Initially, Mrs. Snider moves to dismiss the appeal, arguing that her sisters are not aggrieved parties. She claims that they have no interest in the appeal in that her

claims for a refund could in no way harm either the estate or them. This argument stems from the premise that Mrs. Snider agreed to pay all costs associated with her claim, indemnify both the estate and the other representatives for any claim by the IRS arising from her actions, and limit her commission to the amount of the refund. For reasons which will become apparent, we reject that argument and thus deny the motion to dismiss.

■■■ Appellants first argue that their vote to waive their right to a commission in July, 1980, bound Mrs. Snider as well. Therefore, according to appellants, Mrs. Snider has no right to any commission. We reject that argument as well. We simply do not believe that two of three personal representatives can join together to waive the other personal representative's right to a commission. In *Gaines v. Reutch*, 64 Md. 517, 521, 2 A. 913 (1886), the Court made clear that "[t]he right to commissions for administering upon an estate does not in any sense arise from contract, but is founded only in statutory enactment." Md.Code Ann.Est. & Trusts art., § 7–601(a) provides that "[a] personal representative ... is entitled to reasonable compensation for services," to be set, subject to § 7–601(b), by the orphans' court. Even the testator cannot deprive a personal representative of his or her right to commissions, "for such a privilege would have the effect of repealing the statute." *American Etc. Comm. v. Eisenberg*, 194 Md. 193, 198, 70 A.2d 40 (1949). If the testator cannot defeat a personal representative's right to commission, surely an antagonistic co-personal representative cannot do it.

■■ Appellants next argue that the trial court abused its discretion in granting the commission because (1) when combined with attorneys' fees already earned and granted, the $60,000 commission exceeds the permissible statutory maximum, (2) Mrs. Snider did not perform sufficient services to justify the commission, and (3) her claimed attorneys' fees were not for the benefit of the estate but rather were for her own personal benefit. These arguments, of course,

go principally to the amount of the award. Our concern, however, which will cause us to vacate the award, is not with the amount itself but with the basis on which the court made the award, coupled with the method of accomplishing the payment of the commission.

Though facially clever and no doubt well-intentioned and honestly meant, Mrs. Snider's scheme could very well constitute a fraud on the government.

It is important to keep in mind, at the outset, that Mrs. Snider herself is entitled to no refund from IRS. If, and to the extent, a refund is due, it is due and payable to the estate which would have overpaid the tax in the first instance. Such a refund, together with whatever interest is payable on it, would be an asset of the estate and would have to be treated and accounted for accordingly. It would be wholly improper simply to pay it over to Mrs. Snider.

Among the deductions allowed to be taken from the value of the gross estate in determining the federal estate tax are administration expenses. Title 26, U.S.C. § 2053(a) (1979). In partial implementation of that provision, 26 C.F.R. § 20.2053–3(b) (1987) provides, in relevant part:

"The executor or administrator, in filing the estate tax return, may deduct his commissions in such an amount *as has actually been paid or in an amount which at the time of filing the estate tax return may reasonably be expected to be paid,* but no deduction may be taken if no commissions are to be collected. If the amount of the commissions has not been fixed by decree of the proper court, the deduction will be allowed on the final audit of the return, to the extent that all three of the following conditions are satisfied:

(i) *The district director is reasonably satisfied that the commissions claimed will be paid;*

(ii) The amount claimed as a deduction is within the amount allowable by the laws of the jurisdiction in which the estate is being administered; and

(iii) It is in accordance with the usually accepted practice in the jurisdiction to allow such an amount in estates of similar size and character."

(Emphasis added.)

Under the scheme proposed by Mrs. Snider and allowed by the court, it is not at all clear just how much in the way of commissions will ever, in fact, be paid to Mrs. Snider, for that is entirely dependent on the amount of refund that a claim for $60,000 in commissions will generate. But to generate *any* additional refund over that to which the estate is otherwise entitled, an amended return will have to be filed showing that $60,000 "has actually been paid or ... may reasonably be expected to be paid." Counsel for the estate, as well as the two appellants, have expressed doubt that the full $60,000 would, in fact, be generated by the additional deduction; our own calculations, which coincide with those of appellants, indicate that the maximum refund likely to be generated by an additional $60,000 administration expense would be but $28,509. Even if one adds interest on that amount through March 24, 1987—the date of the order allowing the commission—the total additional refund, by our calculation, would come to only $57,978.

Under the stipulation, that would be the maximum amount to which Mrs. Snider would be entitled. That would then require the estate to file another amended return showing only $57,960 as the additional expense, which, in turn, would reduce the additional refund even further. The game would continue until the actual additional refund (and thus the amount of commission actually due) would approach zero.

This shell game with IRS might be amusing but for the fact that, under applicable IRS regulations, *all* of the personal representatives are required to sign the estate tax returns, all are liable for any penalties imposed for filing a false return, and all are liable for any additional tax arising from the filing of an incorrect return. See 26 C.F.R. §§ 20.6061, 20.6018–2, 20.2002–1 (1987), and Instructions to Form 706, the Federal Estate Tax Return. This, of course,

is what gives appellants any standing they might otherwise require to prosecute this appeal, notwithstanding any proposed indemnity by Mrs. Snider.

The scheme itself is wholly inappropriate. Mrs. Snider is entitled by law to commissions, the amount to be established by the Orphans' Court in accordance with § 7-601(b). Although the court need not be blind to any additional refund of estate taxes that might be generated by the award of a commission, this is not a judicial counterpart to the television game show of "Let's Make A Deal." The court must set the award based on what it finds appropriate for the services actually rendered to the estate by Mrs. Snider, not by how much additional refund will be generated.

ORDER VACATED; CASE REMANDED TO ORPHANS' COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS; APPELLEE TO PAY THE COSTS.