LOUISE M. BUECHNER, Executrix, *v.* ALEXANDER GOODMAN, et al.

[No. 40, January Term, 1938.]

*Decided March 10th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*John Holt Richardson* and *Charles D. Allman, Jr.,* for the appellant.

*Eldridge Hood Young* and *Z. Townsend Parks, Jr.,* with whom were *Young & Crothers* on the brief, for the appellees.

SHEHAN, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Superior Court of Baltimore City on a directed verdict in favor of the defendants, Alexander Goodman and Maurice Glick, copartners trading as Goodman & Glick, Attorneys at Law. C. Fred Buechner, now deceased, sued the appellees for $3,000 retained by them as a fee out of the proceeds of two checks aggregating $15,000, turned over to Alexander Goodman, one of the partners, to be held in escrow for him. The plaintiff died during the pendency of the action, and Louise M. Buechner, his wife, as his executrix, was made party plaintiff in his stead. The action was in assumpsit under the common counts and, after the filing of a bill of particulars, the defendants interposed the general issue pleas. No question as to the partnership, the nonjoinder of plaintiffs, or misjoinder of defendants is specifically raised in the pleadings, but these questions are presented in the prayers, as was the right of the defendants to deduct this sum of money out of the funds in hand, without the consent or authority of the plaintiff, and retain it in spite of his protests and objections. The question here is whether there are facts in evidence sufficient to carry the case to the jury and to require the rejection of the prayers of the defendants for a directed verdict.

The prayers were granted at the conclusion of the plaintiff's testimony. The defendants contend that the transaction was entirely with Alexander Goodman, individually, and not with the partnership of Goodman & Glick. The partnership, though alleged in the declaration, was not denied in the pleas, and that question cannot afterwards be considered. Code, art. 75, sec. 28 (108). The testimony supports the contention that the transaction was with Goodman & Glick and that it was the firm's business, and consequently Maurice Glick as a partner was properly joined as a party defendant in the suit. That the transaction was with Goodman & Glick was accepted by both of the partners. The many letters of the defendants, relating to their employment, were

signed, in most part, by Goodman & Glick, but some of them by Alexander Goodman and others by Maurice Glick. The letter, signed by both these partners, of May 16th, 1935, contains this paragraph: "As to fees, we feel that at this time we should have a retainer of $300.00, and since we are to work in conjunction with Mr. Constable in bringing this matter to a consummation, we will get together as to future fees on a reasonable basis, depending on the degree of success as to the ultimate amount recovered for you." This clearly is evidence of the employment of the firm. Such letters and other facts not only constitute evidence of the representation of the plaintiff by the partnership, but also that charges for such services were made by them at the conclusion of the work, and a fee of $300 was demanded and received by the partnership as a retainer at the time their services began. All of this has its conclusion in the letter of Goodman & Glick of January 29th, 1936, signed Goodman & Glick, by Alexander Goodman, in which it appears that the sum of $3,000, the recovery of which is the object of this suit, was retained by the firm as fees out of the sum of money in hand or under their control as attorneys. This item in the account, appearing in the letters, is designated "Goodman and Glick, Attorneys, for professional services, $3000.00," and the deduction was made from the $15,000 then in hand. The above evidence on the question of Maurice Glick's participation in the transaction as a partner is sufficient to carry the case to the jury, on that question.

The question of nonjoinder of parties plaintiff was before the court on the evidence and the prayers. *Armstrong v. Robinson,* 5 G. & J. 412; *Smith v. Crichton,* 33 Md. 103; 1 *Poe, Pl. & Pr.,* sec. 322. And the evidence shows that the money in dispute was entirely that of C. Fred Buechner, and that Fritz Hill, a business associate of Buechner, had no interest in it, and to have made him a party plaintiff would have constituted a misjoinder of parties. The facts supporting this conclusion will be

further discussed in considering the granting of the prayers on other grounds.

C. Fred Buechner was the owner of a chattel mortgage on certain machinery and equipment of the Elk Mills Fabrics Company. This mortgage he assigned for the purpose of foreclosure to Henry Constable, Esq., an attorney at law, practicing in Elkton, Maryland. The important question here presented arises out of the foreclosure proceedings. The mortgagee was the purchaser at the sale of the property and, immediately thereafter, consummated a sale of the same property to Joseph Pernick Company, Inc., for $20,000. Because of some delays in these proceedings, Messrs. Goodman and Glick had been employed, through one Nadel, to represent C. Fred Buechner and to act as his attorneys. At the time of the employment the defendants were paid the retainer of $300 referred to in the letter from Alexander Goodman and Maurice Glick of May 29th, 1935. On the day of the sale, Joseph Pernick Company, Inc., who had purchased the property from Mr. Buechner, was making settlement with him at Mr. Constable's office in Elkton. Pernick Company, Inc., had drawn its check for $12,500 and another for $2,500, and delivered them to Mr. Buechner, in accordance with their agreement. The witness Herman Siegel, who was present, testified: "When that was done Mr. Goodman said that he should have the check that Mr. Pernick was then delivering to Mr. Buechner, and Mr. Buechner asked why, inasmuch as this sale was entirely foreign to the foreclosure. Mr. Goodman said it was the law of Maryland that when there was any chattel mortgage sale, all the moneys, regardless of whether it was a direct sale or not, if it was involved in it directly or indirectly, must remain in Maryland until the sale or proceedings were either ratified or confirmed." After some discussion, and with apparent reluctance, Buechner, relying upon Goodman's statement, endorsed the checks, "Pay to the order of Alexander Goodman, Attorney—C. Fred Buechner," and delivered them to Goodman in escrow to be returned to

him as soon as the sale was ratified. Goodman took the checks to New York, had them certified, endorsed them, and deposited them in his individual account in the Equitable Trust Company of Baltimore, but, after the ratification of the sale, he could not return the checks and did not pay the money. Subsequent to the ratification of the audit, he deducted, without agreement or consultation with Mr. Buechner, the $3,000, as above stated, together with some small items, and sent the balance to C. Fred Buechner, who was much disturbed about the matter, protested against the charge, and finally sued Goodman and Glick. The photostatic copies of the front and back of these two checks, in the record, substantiate the facts above recited. At the trial of the case, the above recited facts were offered in evidence, as were the objections to this fee of $3,000, and Goodman and Glick's refusal or failure to return it, or any part of it. Upon this state of facts, the court directed a verdict in favor of the defendants, and from the judgment on the verdict this appeal is taken.

An attorney bears a fiduciary relation to his client with respect to any money received or collected by him, and the burden is upon the attorney to prove that any money retained as a fee was for services authorized and actually rendered and that the charge is reasonable and fair. This court, in *Merryman v. Euler*, 59 Md. 588, said: "Under such circumstances, the law makes a presumption against the attorney and in favor of the client. In such case the onus is on the attorney to prove the entire *bona fides* and fairness of the transaction. * * * When a security is taken by an attorney from a client as compensation for his services, the presumption is that it is unfair and the onus of proving it fair is on the attorney."

Even more directly in point is the statement in 7 *C. J. S. Attorney and Client*, sec. 154, p. 992, that, "An attorney sued for money collected by him and not paid over has the burden of proving that his use of the money was in good faith and in accordance with instructions. * * * If the attorney defends on the ground that the

amount retained is due him for legal services the burden is on him to prove the services and their value," and this statement is approved in many courts of other jurisdictions, as will appear by reference to the text and citations in support of the above statement of the law in 5 *American Jurisprudence, Attorneys at Law*, secs. 188, 189, and 190.

It is clear that the presentation of the facts above detailed established for the plaintiff a *prima facie* case, and he was compelled to go no further or offer evidence with respect to the character of the legal services, their value, or the good faith of these defendants; that is the burden which the law imposed upon them and not upon him. It is clear, therefore, that the trial court, in granting the prayer for a directed verdict in favor of the defendants, committed reversible error, and the judgment entered upon that verdict must be reversed.

> *Judgment reversed and case remanded for a new trial; costs to be paid by the appellees.*