TUCKER *v.* DUDLEY

[No. 56, September Term, 1960.]

*Decided November 14, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Fletcher Krause,* with whom was *William R. Sutton* on the
brief, for appellant.

*Walter V. Harrison,* for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of an equity court awarding
the sum of $1,500 to the appellee, as a fee for legal services
rendered to the appellant, out of funds paid to the clerk of
court pursuant to a decree of interpleader, the balance of said
funds, after deduction of court costs, to be paid to the appel-
lant.

It is undisputed that early in January, 1959, Tucker, who
was employed as a steel foreman by Armco Corporation,

asked Dudley to represent him in negotiations for a property settlement with Tucker's former wife, who had obtained a divorce *a vinculo* from him in 1957. It seems that after the parties separated in 1955 she had continued to live, with the two Tucker children, at 131 North Symington Avenue, in the dwelling house owned by them in fee simple as tenants by the entireties. Apparently the divorce decree provided support for the children but no alimony. The effect of the decree was, of course, to convert the tenancy by the entireties into a tenancy in common. *Keen v. Keen,* 191 Md. 31, 37. In 1958, she married Dr. Rudoff, who moved into the house, but it appears that they wished to move into a larger house and communicated to Tucker their desire that he agree to a sale and division of the proceeds.

According to Dudley, he wrote Mrs. Rudoff that he had been retained to represent her former husband in the partition of the property. She retained Mr. Deems Barnard, who submitted to Dudley a statement setting forth certain items claimed to have been paid by her since the parties separated in May, 1955—mortgage payments ($3,071.25), taxes ($805.00), repairs ($210.00), conversion of upstairs apartment ($1,400.00), a total of $5,486.25. The unpaid balance on the mortgage at that time was $3,950.26, and an offer of $13,900.00 had been received for the property. Prior to the separation Tucker had paid all the charges against the property. Dudley testified he showed these figures to Tucker, and Tucker agreed they were correct. Dudley admitted that he never visited the property, never had it appraised, did not examine the title, or make any effort to verify the payments claimed by Mrs. Rudoff. He and Tucker "figured" the net amount to be divided by husband and wife was $3,463.49 (as a plain matter of arithmetic it was $4,463.49), and that the husband's share would be $1,731.74 (actually it should have been $2,231.74). Tucker said, "Well, that's it," but Dudley said, "Let's try to get $5,000." He did not suggest that there was any legal basis for contesting Mrs. Rudoff's claims of set-off, nor did he suggest that Tucker would have any claim for a share in the household furniture, or in the rent of the apartment, $70 a month, which Mrs. Rudoff had retained, or for her use and

occupation. Dudley admitted he did not know that she had received rent for an apartment. "I felt as though Mrs. Rudoff and her new husband wanted to buy a $29,000.00 home and she had her heart and soul set on this home." Dudley put the $5,000.00 proposition to Barnard the next day. It was promptly accepted. On January 31, 1959, Dudley prepared, and the parties executed, a written agreement reciting that a contract for the sale of the property had been signed, that Tucker should receive $5,000.00 as his share regardless of the sales price and that all personal property, such as furniture, should belong to Mrs. Rudoff.

On March 12, 1959, Dudley wrote to Miles and Stockbridge, representing the purchasers, stating that he would be present at the settlement on March 20, 1959, informing them of the terms of the written agreement of January 31, 1959, and requesting that two separate checks be made out, one to "Mrs. Rudoff for her share and the other to Mr. Tucker and myself as his Attorney, thus avoiding any complications that may arise."

Dudley testified that a few days before the settlement Tucker asked him what his fee would be. There had been no previous conversation on the subject. Dudley said: "I'll take one-third, that is my figure of whatever we get." He did not testify that Tucker agreed to this. He and Tucker attended the settlement. It appears that a few days before Tucker had mentioned the fact that he had collected $900.00 upon the surrender of a policy on his life, apparently taken out in connection with the mortgage loan on the property, on which both parties were liable, and had agreed to pay one-half to Mrs. Rudoff. Since Tucker had not paid it, Dudley did so at the settlement, by his own check, for $480.85, which included $30.85 for an adjustment of taxes. This sum was subsequently repaid to him by Tucker. The deeds were then signed, and Dudley took the check for the $5,000.00, payable to Tucker and Dudley, attorney. They returned to Dudley's office, and Dudley calculated and wrote on a slip of paper "one-third of the gross of $5,419.15." This came to "$1,806.38". He told Tucker, "This $5,000 was merely a shot at the moon and we hit, and I said, 'In view of that, I think I am entitled

to one-third,' and he hemmed and hawed around. I said, 'Make it $1500,' and he said, 'That's a deal.' " There was no written agreement. They went to the Union Trust Company branch and arranged for the collection of the check. They both signed the check, and Tucker said he was "well pleased with everything." But a few days later Tucker came to Dudley's office and said a friend had told him "even $1,500 was too much," and "for his part the check would remain in the bank forever." Eventually, the bank instituted the interpleader proceedings, in which Dudley was designated as the plaintiff, and Tucker the defendant.

Tucker's version of what occurred is somewhat different. He testified that the first time Dudley mentioned a fee was after the settlement, in Dudley's office. He asked Dudley, "What's this going to cost me?" Dudley said, "We'll see." Dudley was writing on a piece of paper and said "$1,500". Tucker replied: "That seems like a hell of a lot of money for what you have done." Dudley said: "That's my fee." Tucker never agreed to a $1,500 fee, or any other fee. Dudley never sent him a bill. Dudley had asked him in January what he thought the property was worth. Allowing for the amounts paid on the mortgage by Mrs. Rudoff, he figured "roughly $10,000." He told Dudley he would be satisfied with $5,000 as his share. Dudley drew the contract for that amount, and he signed it.

The interpleader proceeding instituted by the bank, as a stakeholder, recited that it had proffered payment by check payable to both the claimants of the amount collected, but that the full sum was claimed by each. Tucker answered, claiming the whole amount, as the net balance due him from the sale of the property, and alleging that Dudley had "no just claim or right thereto, or lien thereon, legal or equitable". Dudley answered, alleging that the $5,000 represented the collection by him, as attorney for Tucker, of a disputed claim, and that Tucker had promised to pay him a fee of $1,500 "from said collection". In this posture of the case, it would seem that the first question presented is whether interpleader was properly granted.

It is clear that Dudley acquired no lien upon the sum col-

lected by the Bank and paid into court. In Maryland no charging lien in favor of an attorney for his fee is recognized, even where a claim is reduced to judgment or money paid into court. See *Ashman v. Schechter,* 196 Md. 168, 176; *Maddox v. District Supply, Inc.,* 222 Md. 31, 37; *United States v. 72.71 Acres of Land, etc.,* 167 F. Supp. 512 (D. Md.). The retaining lien, recognized in Maryland, is based on possession; but the fund in the instant case was not reduced to possession by the attorney. But on the other hand, we think the transaction whereby the check was deposited with the bank can be treated as a partial assignment to Dudley. There is an analogy to a situation where a judgment is entered to the use of an attorney. Cf. *Marshall v. Cooper,* 43 Md. 46, 62, 63. It is true that there is no evidence that Tucker knew of Dudley's letter directing that the check be made payable to Tucker and Dudley, attorney, or that he authorized it, but he attended the settlement, made no objection to the delivery of the check in that form, and in fact endorsed it along with Dudley, at the time of its delivery to the bank for collection. We think this was at least acquiescence, if not ratification. The word "attorney" following Dudley's name did not necessarily import a trust, but might mean assignee. *First Denton Nat'l Bank v. Kenney,* 116 Md. 24, 34. Dudley's answer, in effect, set up a claim to a portion of the fund, as joint payee and assignee *pro tanto.* We think there was sufficient legal basis for the decree of interpleader. See *Zihlman v. Zihlman,* 75 Md. 372, 375; *Phillips v. Taylor,* 148 Md. 157, 161, cf. *Steffey, Inc. v. American Bank Stationery Co.,* 161 Md. 124, 129, and *Rockwell v. Carroll Printing & Pub. Co.,* 191 Md. 542, 548. See also *Foss v. First Nat. Bk. of Denver,* 3 Fed. 185 (C. C. Colo.), Chafee, *Modernizing Interpleader,* 30 Yale L. J., 814, 836, and cases cited. However, we think that under the pleadings the court should have directed the immediate payment to Tucker of the balance, over and above the $1,500 claimed and an allowance for costs of the proceeding, since there was no adverse claim to that balance.

The chancellor found as a fact that Tucker agreed that Dudley's fee should be $1,500, although Tucker denied that he at any time agreed to that sum. Evidently the chancellor

accepted Dudley's version of what occurred, and we cannot find that he was clearly wrong. But the chancellor did not consider whether the bargain was fair. Dudley did not claim that Tucker ever agreed to pay him a percentage of the amount recovered. He claimed that Tucker agreed to pay him $1,500 after the settlement and long after the agreement as to the amount Tucker would receive had been executed. It is generally held that prior to employment, an attorney may bargain at arm's length with a prospective client. *Etzel v. Duncan,* 112 Md. 346, 353. But once employment is accepted, the parties stand in a confidential and fiduciary relationship, and the burden is upon the attorney to show that the transaction is voluntary and fair. *Merryman v. Euler,* 59 Md. 588, 591. The cases in other jurisdictions are in accord. See Note 19 A. L. R. 847, 855. See also Restatement (Second), *Agency* § 390 Comment e, and Williston, *Contracts* §§ 1029, 1625A note 12 (rev. ed.). In the instant case Dudley had no agreement as to his fee until after the settlement, and had he not directed that the check be drawn in the form mentioned, would have had no security for his fee and would have been entitled to no more than the fair and reasonable value of his services upon a *quantum meruit* basis. Cf. *Buechner v. Goodman,* 174 Md. 131, 137, and *Palmer v. Brown,* 184 Md. 309, 317. By insisting that the payment of any funds to Tucker be conditioned upon an agreement as to fee, Dudley was in a dominant position. Tucker's agreement was promptly repudiated as soon as he obtained independent advice.

In asserting his claim in an equity court to an allowance for services out of the fund paid into court, we think the fact that the client agreed to the liquidation of the claim does not relieve the attorney from the burden of showing that the amount agreed upon was fair and reasonable. Cf. *Littlefield v. Kearns,* 73 A. 2d 732, 734 (N. J. Super. App. Div.). While we have found no case directly in point, we think the tests of reasonableness, laid down in cases where fees are allowed out of an estate or fund in court, are applicable here. See *American, etc., Comm. v. Eisenberg,* 194 Md. 193, 200; *Spencer v. McMullen,* 198 Md. 90, 98; *Kenny v. McAllister,* 198 Md. 521, 525; *Plakatoris v. Bainder,* 204 Md. 223, 229. See also the elaborate note in 56 A. L. R. 2d 13.

We think the appellee did not sustain the burden, and that the fee claimed was excessive under the circumstances. By his own admission Dudley made no independent investigation of the facts or the law of the case. The figures supplied by the wife's attorney indicated that Tucker would be entitled to about $2,500 in any event, and Dudley's offer to settle for $5,000 was accepted at once. The contention that Dudley might fairly claim one-third of the whole amount overlooks the fact that Tucker's right to about one-half was uncontested, and it may well be that Tucker was entitled to an accounting for rent as a tenant in common, at least from the date of the divorce or the date of the wife's remarriage. Nor is it clear that the wife was entitled to credit for improvements. See *Withers v. Douglas,* 206 Md. 141, 148. In short, it may well be that what Dudley obtained for Tucker, with a minimum of effort, was no more than his due, whereas Dudley variously described it as a "windfall" or "shot at the moon." Certainly Dudley was entitled to be paid for what he did and what he accomplished, but it would appear that he spent little time on the case. He did not attempt to estimate his time. There was no testimony from other lawyers as to the reasonable value of his services, nor did the chancellor undertake to value them out of his own experience. Under the circumstances we think the case should be remanded in order that the chancellor may fix a fair and reasonable fee, applying the tests laid down in the cases cited.

> *Decree reversed and case remanded for further proceedings not inconsistent with the views expressed in this opinion, costs to be paid by the appellee.*