## IN THE MATTER OF FAMILY SAVINGS AND HOME LOAN ASSOCIATIONS, INC.

[No. 234, September Term, 1966.]

*Decided April 6, 1967.*

The cause was submitted on the brief to HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and MCWILLIAMS, JJ.

Submitted by *Theodore A. Miller* and *Miller, Cummings & Roberts* for appellants.

MCWILLIAMS, J., delivered the opinion of the Court.

This might be called the third installment of the story of the liquidation of The Family Savings and Home Loan Association. The first installment will be found in *Family Savings v. Stewart,* 232 Md. 424, 194 A. 2d 118 (1963), the second in *Family Savings v. Stewart,* 241 Md. 89, 215 A. 2d 726 (1966). Here the appellants are wroth because, they say, the chancellor was stingy in the matter of the allowance of their counsel fee. We shall add to the twice told tale only those events which will shed light on the matter before us. The case was submitted on the brief. There was no brief and no appearance for any other parties in interest.

When the holders of Christmas Club accounts, in 1962, sought preference over those holding savings share accounts a group of 16 shareholders, calling themselves the Shareholders Protective Committee (committee), employed the appellants, Irving A. Levine, Esq., and the firm of Miller, Cummings and Roberts, to resist the campaign of the Christmas Club depositors (Xmas Club). They lost. *Family Savings, supra* (232 Md.).

Upon the petition of the attorneys for the Xmas Club the chancellor ordered the Receiver to pay them a counsel fee of 25% of "the amount owed each creditor holding a Christmas Savings Account." The fee amounted to approximately $125,-000.

For representing the committee the appellants asked for a fee of $15,000, but the court allowed them only $7,500.

The Xmas Club, having tasted blood, now demanded interest on their accounts from the appointment of the receiver on 27 October 1961 to the date of distribution. The chancellor decided they were entitled to the interest (about $72,000) and, again upon the petition of their attorneys, allowed a counsel fee equal to 25% (about $18,000) of the interest. When we reversed the chancellor, *Family Savings, supra* (241 Md.), appellants asked for the same percentage (25%) of the interest recaptured by their victory in this Court. Judge Pugh thought this was "fair and reasonable compensation * * * *for all services rendered by them*, both in [the] previous [unsuccessful] litigation" and in the interest litigation. By requiring the earlier award of $7,500 to be credited on the $18,000 (25%) he, in effect, reduced the fee they asked for from $18,000 to $10,500. Feeling put upon, appellants urge us to reverse the learned chancellor.

In *American Etc. Comm. v. Eisenberg,* 194 Md. 193, 200, 70 A. 2d 40 (1949) we considered the propriety of the allowance of a counsel fee by the Orphans' Court of Allegany County. Judge Delaplaine, speaking for the Court, said:

> "Canon 12 of the Canons of Professional Ethics, which were adopted by the American Bar Association in 1908 and by the Maryland State Bar Association on June 25, 1948, provides: 'In fixing fees, lawyers should avoid charges which overestimate their advice and services, as well as those which undervalue them. * * * In determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the par-

ticular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) *the customary charges of the Bar for similar services;* (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client.'

"We accept this Canon as a guide, and we also reaffirm the rule that the principal elements to be considered in determining the reasonableness of counsel fees are the amount involved, the character and extent of the services, the time employed, the importance of the question, and the fidelity and diligence of the attorney. *Knapp v. Knapp,* 151 Md. 126, 134 A. 24." (Emphasis supplied.)

*Eisenberg, supra,* was cited in *Tucker v. Dudley,* 223 Md. 467, 164 A. 2d 891 (1960) where counsel claimed ⅓ of a fund paid into court. In reversing the chancellor's allowance of the fee claimed because he "did not consider whether the bargain was fair," Judge Henderson, for the Court, commented:

"Certainly Dudley was entitled to be paid for what he did and what he accomplished, but it would appear that he spent little time on the case. He did not attempt to estimate his time. *There was no testimony from other lawyers as to the reasonable value of his services, nor did the chancellor undertake to value them out of his own experience.* Under the circumstances we think the case should be remanded in order that the chancellor may fix a fair and reasonable fee, applying the tests laid down in the cases cited." *Id.* at 474. (Emphasis supplied.)

In *Dessel v. Goldman,* 231 Md. 428, 431, 190 A. 2d 633

(1963), Judge Hammond (now Chief Judge), for the Court, said:

> "The Eisenberg [*Eisenberg, supra*] case adopted as standards for judging a proper fee those suggested in Canon 12 of the Canons of Professional Ethics of the American Bar Association which were adopted by the Maryland State Bar Association and the Bar Association of Baltimore City. Of these several are particularly applicable and pertinent here: (1) the time and labor involved, the novelty and difficulty of the questions involved, and the skill requisite properly to conduct the cause; (2) *the customary charges of the Bar for similar services;* and (3) the amount involved in the controversy and the benefits resulting to the client from the services." (Emphasis supplied.)

*Keyworth v. Israelson,* 240 Md. 289, 310, 214 A. 2d 168 (1965) involved, among other things, a dispute over a counsel fee. Judge Oppenheimer, in the course of disposing of this aspect of the case, said for the Court:

> "In the preceding portions of this opinion, we have affirmed the finding of the court below that Plimack and Israelson were entitled to payment of legal fees out of the fund, but, for the reasons stated, have found that the amount of those fees is subject to further determination. Accordingly, pursuant to Maryland Rules 871 a. and 872, as it appears to this Court that the substantial merits of this portion of the case will not be determined by affirming, reversing or modifying the order, and that the purposes of justice will be advanced by permitting further proceedings in the cause with the introduction of additional evidence, we remand the case for such further proceedings."

Appellants argue, somewhat cyclically, that because the trial judge awarded counsel for the Xmas Club 25% ($125,000) in the preference litigation and 25% ($18,000) in the interest litigation (before reversal) he has "clearly defined the areas of reasonable exercise of discretion in fixing counsel fees; namely, counsel who succeeds in producing a result for his client is reasonably entitled to a fee of *25 percent* of the fund he has cre-

ated for his client's benefit." Appellants leap to the conclusion that it was "an abuse of discretion for the court to award appellants a lesser fee * * * than [the court] * * * had accorded opposing counsel." No authority for this proposition has been cited and we are aware of none, except possibly the Bellman's bald assertion that he had found the habitat of the Snark.[1]

Appellants were not appointed by the court. Nor were counsel for the Xmas Club. As earlier stated appellants were employed by a group of 16 persons. Counsel for the Xmas Club were employed by a group of 11 persons. In neither case are the terms of the employment disclosed. It seems reasonable to assume, therefore, that there was no agreement in respect of compensation in either case. It is settled that, in these circumstances, and in the absence of objection by other members of either class, the court may determine the fee to be allowed out of funds over which it still has control. *Tucker v. Dudley, supra* and the cases therein cited. It is equally well settled, however, that the determination must be made in accordance with the rules above set forth and, in our judgment, the use of a percentage of the amount involved, without more, is repugnant to those rules.

Appellants made no effort to show how much time was expended or how much labor was involved. Nor was there any showing that the percentage claimed bore any relation to "the customary charges of the Bar for similar services." It does not appear that the chancellor held any kind of a hearing or that there were filed for his consideration certificates from other lawyers as to the value of the services rendered. Of course, upon remand the appellants may be able to make a showing capable of supporting an award of $18,000 for their services and, if they are successful in this, the fact that it just happens to be 25% of the amount involved should not, of itself, prejudice their right to be paid that much. Whatever the final result may be, however, $18,000 seems to us to be a figure requiring much more support than can be found in this record.

---

1. "Just the place for a Snark! I have said it twice:
      That alone should encourage the crew.
   Just the place for a Snark! I have said it thrice:
      What I tell you three times is true."
   Lewis Carroll, *The Hunting of the Snark*, Fit the First, st. 2.

The award of counsel fees based on a percentage not agreed to by the parties is bound to produce incongruous results. The instant case provides an apt example. There can be little doubt, for instance, that appellants worked just as hard and just as long for the shareholders in the preference case as did counsel for the Xmas Club. That counsel for the Xmas Club should, in the circumstances, be given $125,000 while the appellants are held to $7,500 seems to us to be putting much too great a premium on success. We have compared the record and the briefs in the interest case with the record and the briefs in the preference case and we find it difficult to say which one represents the greater expenditure of time and labor on the part of counsel. It would seem to follow, therefore, that if a fee of $18,000 is fair and reasonable in the interest case, $125,000 in the preference case is clearly excessive. It is probably fair to assume that counsel's burden in the preference case would not noticeably have been increased if the Xmas Club deposits had been $4,000,000 instead of $500,000, so, if appellant's contention is sound, counsel would have been entitled to a fee of $1,000,000 —an enchanting notion, to be sure, but it points up the absurdity of the percentage approach. So well rooted was the percentage syndrome that the trial court was satisfied, in the interest case, to give counsel for the Xmas Club 25% just for their efforts in the trial court. All things considered, we cannot say it was unfair of him to reduce the appellants from $18,000 to $10,-500, but it was surely inconsistent in the circumstances of this case and violative of the settled rules. Although we shall neither affirm nor reverse the order of the trial court, we shall remand the case so that in further proceedings evidence can be received and considered by the court to the end that counsel's fee can be determined in accordance with the views expressed in this opinion and the rules enunciated in the cases herein cited. *Keyworth, supra.* Maryland Rule 871 a.

> *Case remanded without affirmance or reversal for further proceedings consistent with the views expressed in this opinion; costs to be paid by the receiver.*