CLYDE C. RANDOLPH, JR. v. ELVA J. SCHUYLER

No. 92

(Filed 25 January 1974)

1. Attorney and Client § 7— contingent fee contract — scrutiny by courts

Contracts for contingent fees are clearly scrutinized by the courts when there is any question of reasonableness of the fee.

2. Attorney and Client § 7— contingent fee contract — execution during attorney-client relationship — reasonableness — burden of proof

The burden of proof is upon the attorney to show the reasonableness and fairness of a contract fixing the attorney's fee made during the existence of the attorney-client relationship.

Randolph v. Schuyler

ON *certiorari* to the Court of Appeals to review its decision, reported in 18 N.C. App. 393, 197 S.E. 2d 3, affirming a summary judgment in favor of the plaintiff, entered by *Clifford, J.*, at the 19 February 1973 Session of the District Court of FORSYTH.

The plaintiff, an attorney at law, brought this action to enforce an alleged contract for a contingent fee for legal services. The complaint alleges: In September 1959, the defendant and her late husband engaged the plaintiff as their attorney to represent them "in their claim for benefits under a certain insurance certificate issued by a life insurance company pursuant to a group policy plan," the insurance company having denied any liability for the payment of benefits to the defendant as beneficiary or to her husband as the insured. The plaintiff agreed to represent the defendant and her husband "in their claim" for a contingent fee of "33-1/3% of the amount of the recovery." Pursuant to the agreement the plaintiff performed legal services and, "as a result thereof," the insurance company paid to the defendant "in settlement of said claim the sum of $13,000.00" on or about 18 April 1972. The reasonable value of such services to the defendant was $4,333.33. The defendant has not paid anything to the plaintiff on account of such services.

The answer of the defendant simply denied all of the material allegations of the complaint, other than the making of a written contract in September 1959 and nonpayment of any fee for services.

In response to the defendant's interrogatories, the plaintiff stated, in substance:

He, the defendant and her husband made a written contract (Exhibit A), dated 11 September 1959. It provided that the defendant and her husband, "being advised that they have a cause of action against the Equitable Life Assurance Society of the United States [the Equitable] by reason of a claim of total and permanent disability," thereby retained and employed the plaintiff as their attorney to endeavor to obtain "a compromise settlement of said matter" or, failing that, "to bring an action thereon," the plaintiff's fee to be 33-1/3% of "the amount of recovery" by a settlement or by a final judgment in the Superior Court without appeal, 40% in event of an appeal and nothing "in the event that there is no recovery under the claim above referred to."

Randolph v. Schuyler

The original contract was superseded by a written contract (Exhibit B) dated 22 April 1960, which provided, in substance:

The plaintiff, the defendant and her husband having contracted (Exhibit A) with respect to the professional services of the plaintiff and he having rendered to them "valuable professional services as their attorney with respect to a claim for life insurance benefits," by reason of the above mentioned certificate of insurance, and Dr. Edward R. White having also rendered valuable professional services in connection with the treatment and evaluation of the defendant's husband under the provisions of such certificate, the defendant and her husband desired to secure to the plaintiff and to Dr. White a portion of the proceeds of the certificate, payable upon the death of the defendant's husband, and the plaintiff and Dr. White desired to accept "in full payment of all professional services rendered" an interest in the proceeds of the said certificate of insurance. Therefore, in consideration of such services, the defendant and her husband did thereby "convey and assign" to the plaintiff and to Dr. White, as their interests might appear, one-third of the net proceeds of the said certificate of insurance. "This agreement shall supersede the previous contract" (Exhibit A).

Initially, prior to seeing the certificate of insurance, the plaintiff advised the defendant's late husband that he "probably" had a claim against the Equitable for periodic payments, totaling approximately $13,000, if he could furnish evidence of his total and permanent disability commencing prior to the termination of his employment by R. J. Reynolds Tobacco Company.

The plaintiff received a letter from the Equitable, dated 22 October 1959 (Exhibit C), advising that the certificate of insurance made no provision for periodic payments on account of total and permanent disability, *but calling attention to a provision therein for an extension of the insurance coverage without further premium payment* if certain proofs were submitted showing continuous total disability which commenced while the insurance was in force.

(Nothing in the record suggests that the plaintiff, at any time, advised the defendant or her husband that he had received this letter from the Equitable.)

Upon receiving this letter, the plaintiff reexamined the certificate of insurance and advised the defendant and her husband that the husband was "probably" entitled to such extension of the life insurance coverage and further advised that they "continue our efforts to assemble the necessary medical evidence so as to establish Mr. Schuyler's eligibility for group life insurance coverage without premium payment." The defendant and her husband agreed that this should be done.

On 4 December 1959 the plaintiff forwarded medical reports to the Equitable and on 27 January 1960 submitted further medical reports. On 28 March 1960 the plaintiff received written notice from the Equitable that Mr. Schuyler's claim was approved and that his insurance coverage would continue without premium payment for one year (7 December 1959 to 6 December 1960), provided he remained continuously and totally disabled.

Thereafter, until 21 September 1966, the plaintiff had several further conferences and some additional correspondence relating to the furnishing of medical proof of Mr. Schuyler's continued disability.

The plaintiff obtained from Dr. White an agreement that payment of the latter's bill to Mr. Schuyler for medical services, rendered between 16 December 1959 and 7 July 1960, would be deferred until the death of Mr. Schuyler and would be paid, with interest, from the "compensation" the plaintiff "anticipated receiving under the terms of Exhibit B."

The $13,000 paid to the defendant, as beneficiary under the said certificate of insurance, would not have been paid to her had the plaintiff not filed the proofs of Mr. Schuyler's disability and thus brought about the extension of the insurance coverage without further premium payment.

By deposition the defendant testified, in substance:

In 1959, while an employee of Reynolds Tobacco Company, her husband was permanently disabled by a severe heart attack. She and her husband conferred with the plaintiff "about the possibility of collecting insurance benefits." The plaintiff said that "he could get the benefits from this policy and that he would take a third of the policy to get it." They, thereupon, executed the agreement identified as Exhibit A. The purpose was to get something for the defendant, her husband and their

Randolph v. Schuyler

five small children "to live on," not to inquire about life insurance.

Thereafter, the plaintiff informed the defendant and her husband that "the policy did not contain disability benefits," but "he thought" that he could get the disability established and obtain a waiver of premium. On 22 April 1960 they signed another contract (Exhibit B) with the plaintiff, he telling them that he would pay Dr. White's bill.

After the policy was reinstated by Equitable, the Schuylers received each year from the company the form to be filled out by the doctor and returned to the company, which was done.

Pursuant to the plaintiff's request for admissions, the defendant admitted that on 18 April 1972 she received from the plaintiff the check of the Equitable Life Assurance Society in the amount of $13,000, the proceeds of the life insurance certificate. Also enclosed in the letter transmitting this check was a photostatic copy of the agreement (Exhibit B) dated 22 April 1960, and the plaintiff's statement for services rendered.

In reliance upon the verified complaint, the deposition of the defendant, the plaintiff's answers to interrogatories and the above mentioned exhibits, the plaintiff moved for summary judgment.

Thereupon, the defendant filed her affidavit to the following effect:

Prior to 11 September 1959 her husband "consulted the plaintiff concerning a claim that he may have against the Equitable Life Assurance Society of the United States, at which time the defendant and her husband were informed by the plaintiff that the * * * husband * * * had a claim against the above referred to insurance company for periodic payments due to * * * disability." In reliance thereon, the defendant and her husband entered into the agreement identified as Exhibit A. Shortly after 22 October 1959, the plaintiff advised the defendant and her husband that her husband did not have a claim against the Equitable and could not collect the periodic payments. For this reason, the plaintiff is not entitled to compensation for services under the contingent fee agreement dated 11 September 1959 (Exhibit A).

The plaintiff's motion for summary judgment was allowed on 26 February 1973.

On 7 March 1973 the defendant moved for summary judgment and requested the court to make findings of fact to the effect that the plaintiff had not collected any periodic disability benefits for her husband and so had failed to perform his contract (Exhibit A). This motion and request for findings of fact were denied by the District Court.

*Charles F. Vance, Jr., and W. A. Copenhaver for plaintiff. Of Counsel: Womble, Carlyle, Sandridge & Rice.*

*Allen A. Bailey and Thomas D. Windsor for defendant.*

LAKE, Justice.

We concur in the holding of the Court of Appeals that under Rule 8(a), Rules of Civil Procedure, the allegations of the complaint are sufficient to permit the admission in evidence of the second contract between the plaintiff and the defendant and her husband (Exhibit B). This, however, does not dispose of the matter. The question which remains is, Upon all of the evidence, was the plaintiff entitled to a summary judgment for $4,333.33?

In *Casket Co. v. Wheeler,* 182 N.C. 459, 109 S.E. 378, 19 A.L.R. 391 (1921), in holding a contingent fee contract between an attorney and his client valid, this Court said:

"A contract for a contingent fee must be made in good faith, without suppression or reserve of fact or of apprehended difficulties, and without undue influence of any sort or degree; and the compensation bargained for must be absolutely just and fair, so that the transaction may be characterized throughout by all good faith to the client. If the contract is shown to have been obtained by fraud, mistake, or undue influence; or it if is so excessive in proportion to the services to be rendered as to be in fact oppressive or extortionate, it will not be upheld. * * * One very properly may demand a larger compensation that is to be contingent, or not certain. A contingent fee is permitted to attorneys only as a reward for skill and diligence exercised in the prosecution of doubtful and litigated claims, and it is not allowed for the rendition of merely minor

---

---

services which any layman or inexperienced attorney might perform."

*Dorr v. Camden,* 55 W.Va. 226, 46 S.E. 1014 (1904), lays down the same rule, the Court saying, "It is the skill, diligence, ability, experience, judicial knowledge, and judgment of the attorney that is thereby rewarded, and the performance of duties that require no such qualities is wholly insufficient to sustain such fee as the true measure of such services can be ascertained on a quantum meruit." To the same effect, see 7 C.J.S., Attorney and Client, § 186 b.

In *Stern by Hyman,* 182 N.C. 422, 109 S.E. 79, 19 A.L.R. 844 (1921), this Court held void, as a matter of law, a contract between an attorney and his client fixing the attorney's compensation for professional services, the contract having been made while the relationship of attorney and client was in existence. The Court said that the trial judge should have granted this instruction:

> "It being admitted that at the time of the alleged contract between plaintiff Stern and the defendants (as claimed by plaintiffs) the relation of attorney and client existed between them, the plaintiffs would not be entitled to recover from the defendants any sum for their services which was not fair and reasonable under all the circumstances of the case, no matter what sum was mentioned in the said contract."

In the Stern case, the Court said that the burden of proof is on the plaintiff attorney to show that the contract, i.e., the fee demanded, was fair and reasonable, the attorney being entitled to no greater compensation that he would have been entitled to demand had there been no contract made during the existence of the relationship concerning the fee to be charged. The decision in *Stern v. Hyman, supra,* did not turn upon the fact that the contract, made during the existence of the attorney-client relationship, was for a contingent fee, as distinguished from a contract for a fixed sum, payable irrespective of the result of the attorney's efforts.

In *Higgins v. Beaty,* 242 N.C. 479, 88 S.E. 2d 80, 54 A.L.R. 2d 600 (1955), the contract between the attorney and client, fixing a specified fee for the attorney's services in certain litigation, was made prior to the commencement of the attorney-client rela-

Randolph v. Schuyler

tionship. This Court held that the rule of *Stern v. Hyman, supra,* did not apply. There was no suggestion that the specified fee was excessive, in view of the nature of the contemplated litigation and the large amount involved.

In *Ellis v. Poindexter,* 193 N.C. 565, 137 S.E. 595 (1927), suit was brought on a note given for an attorney's fee, the amount of which was agreed upon after the termination of the litigation for which the attorney was employed. There was nothing to indicate that the amount was excessive. Suit was brought on the note by a holder in due course. Judgment for the plaintiff was affirmed.

In *Dupree v. Bridgers,* 168 N.C. 424, 84 S.E. 696 (1915), it is said, "Written contracts between attorneys and their clients are to be treated and enforced as all other contracts, and in the absence of fraud, coercion, or undue advantage, the amount of compensation agreed upon in the contract is held to be conclusive and binding between the parties." In that case there was no indication that the agreed fee was unreasonable in amount or that the contract was not made with full knowledge by the client of all circumstances relating to the amount of the fee to be charged. The report of the decision shows that the attorneys were employed by the guardian for infant children to institute and prosecute a suit to set aside a deed which had been made by their mother. After the suit was instituted and while it was pending, one of the children became of age and executed a conveyance to the attorneys of a portion of his own interest in the land which was the subject of the suit. The deed recited that it was for "legal services to be performed" and that the grantor agreed to allow as the attorneys' fee, and to pay the attorneys, a portion of the recovery in the pending action an "to this end" conveyed the specified interest in the land described. In affirming the judgment in favor of the attorneys, this Court did not mention the circumstance that the agreement as to the fee and the conveyance in payment thereof were executed during the existence of the attorney-client relationship.

*Dupree v. Bridgers, supra,* has, apparently, never been cited by this Court. While no reference to it is made in *Stern v. Hyman, supra,* or in *Casket Co. v. Wheeler, supra,* those being later decisions of this Court, the views stated in *Dupree v. Bridgers, supra,* must be deemed overruled insofar as they are in conflict with those decisions.

Randolph v. Schuyler

**[1, 2]** The rule of *Stern v. Hyman, supra,* is more strict than that which prevails in other jurisdictions. We need not determine upon this appeal whether it should be modified. The generally accepted view appears to be that a contract made between an attorney and his client, during the existence of the relationship, concerning the fee to be charged for the attorney's services, will be upheld if, but only if, it is shown to be reasonable and to have been fairly and freely made, with full knowledge by the client of its effect and of all the material circumstances relating to the reasonableness of the fee. The burden of proof is upon the attorney to show the reasonableness and the fairness of the contract, not upon the client to show the contrary. See *Rose v. Frailey,* 10 Ill. 2d 514, 517, 140 N.E. 2d 711, 713; *Bounougias v. Peters,* 49 Ill. App. 2d 138, 198 N.E. 2d 142, 13 A.L.R. 3d 688 (1964); *Tucker v. Dudley,* 223 Md. 467, 164 A. 2d 891 (1960); *Thomas v. Turner's Admr.,* 87 Va. 1, 12 S.E. 149 (1890); Annot., 13 A.L.R. 3d 701, 710, 713; 7 Am. Jur. 2d, Attorneys at Law, §§ 211, 215. Contracts for contingent fees, especially, are closely scrutinized by the courts where there is any question as to their reasonableness, irrespective of whether made prior to the commencement of or during the attorney-client relationship. *Pocius v. Halvorsen,* 30 Ill. 2d 73, 195 N.E. 2d 137, 13 A.L.R. 3d 662 (1964); *Gair v. Peck,* 6 N.Y. 2d 97, 160 N.E. 2d 43; *Tonn v. Reuter,* 6 Wis. 2d 498, 95 N.W. 2d 261. It is also the generally accepted rule that even though the specific business for which the attorney was employed had been concluded before the agreement fixing the fee was made, the burden of proof as to its reasonableness does not shift from the attorney to the client. *Thomas v. Turner's Admr., supra;* Annot., 13 A.L.R. 3d 701, 718.

On page 722 of the above cited annotation in A.L.R. 13 3d, it is said, "In determining the enforceability of an account stated between an attorney and his client during the existence of the attorney-client relationship, the courts have generally treated such accounts stated as analogous to ordinary contracts and held them subject to the same general rules that govern the validity of fee contracts made during the existence of an attorney-client relationship." It also appears to be generally accepted in other jurisdictions that although the agreement fixing the amount of the attorney's fee is not made until after the conclusion of the litigation or other matter for which the attorney was employed, the burden of proof as to the fairness of the

agreement and the reasonableness of the fee does not shift from the attorney to the client. *Thomas v. Turner's Admr., supra;* Annot., 13 A.L.R. 3d 701, 789-793.

*Tucker v. Dudley, supra,* is especially pertinent to the present case. There the Maryland court set aside a judgment in favor of the attorney for the reason that the lower court had not considered whether the agreement was fair. The agreement was not reached until after the settlement of the controversy in which the attorney was employed. The Court said:

> "[W]e think the fact that the client agreed to the liquidation of the claim does not relieve the attorney of the burden of showing that the amount agreed upon was fair and reasonable. * * *

> "We think the appellee [attorney] did not sustain the burden, and that the fee claimed was excessive under the circumstances. By his own admission Dudley [the attorney] made no independent investigation of the facts or the law of the case. * * * The contention that Dudley might fairly claim one-third of the whole amount overlooks the fact that Tucker's [the client's] right to about one-half was uncontested * * *. In short, it may well be that what Dudley obtained for Tucker, with a minimum of effort, was no more than his due, whereas Dudley variously described it as a 'windfall' or 'shot at the moon.' Certainly Dudley was entitled to be paid for what he did and what he accomplished, but it would appear that he spent little time on the case. He did not attempt to estimate his time. There was no testimony from other lawyers as to the reasonable value of his services, nor did the chancellor undertake to value them out of his own experience. Under the circumstances we think the case should be remanded in order that the chancellor may fix a fair and reasonable fee, applying the tests laid down in the cases cited."

Applying these principles of law to the facts disclosed by the record before us, we conclude that the record does not support the granting of the summary judgment for $4,333.33 in favor of the plaintiff attorney.

Nothing in the record indicates that either the defendant or her husband was ever advised that the insurance company had, itself, written to the attorney suggesting that upon the

receipt of proper proof of disability it would continue the policy in effect, as a life insurance policy, without payment of further premiums. For all that appears in the record, a simple reading of the certificate of insurance was sufficient to disclose that the certificate holder was not entitled to payments during his lifetime on account of disability and also sufficient to disclose that, upon proof of such disability, he was entitled to the continuation of the certificate in effect without payment of further premiums. For all that appears in the record, the establishment of such disability was simply a matter of requesting the attending physician to complete the forms sent to the plaintiff by the insurance company. The record shows virtually nothing as to the amount of time spent by the plaintiff in procuring the proof of such disability and the continuance of the certificate in effect as a certificate of life insurance.

Nothing in the record shows that any demand, other than the plaintiff's letter, was ever made upon the insurance company for payments during the life of the certificate holder on account of disability. Nothing shows any other claim was ever made upon and denied by the insurance company prior to its own suggestion that the certificate might be continued in effect as a certificate of life insurance. Nothing in the record suggests there was ever any real possibility of litigation over the continuation of the certificate in effect. There is no evidence in the record as to the amount of time spent on the matter by the plaintiff and no testimony of any other attorney as to the reasonableness of the fee now claimed.

Unquestionably, the first contract (Exhibit A) between the plaintiff and the defendant and her husband was for the employment of the plaintiff to collect periodic payments during the lifetime of the defendant's husband. This the plaintiff quickly found and reported that he was unable to do. By the terms of that contract (Exhibit A), the plaintiff was not entitled to compensation for his services in attempting to reach that objective.

Thereupon, the nature of the employment was changed without terminating it and the plaintiff was directed to do that which was necessary to procure the continuation of the certificate as a certificate of life insurance. The record is not clear as to when this aspect of the attorney-client relationship

was concluded. According to the plaintiff's answers to the defendant's interrogatories, after the insurance company accepted the proofs of disability and agreed to continue the certificate in effect as a certificate of life insurance, the plaintiff and his clients entered into the agreement, or assignment of the certificate (Exhibit B), upon which he now relies. However, it also appears from his answers to these interrogatories that after the execution of this document the plaintiff, by reason of his employment as counsel, continued to correspond with the insurance company occasionally for several years and to supply the company, from time to time, with medical evidence of continuing disability. Thus, the agreement upon which the plaintiff relies was executed during the existence of the attorney-client relationship. Consequently, even under the less stringent rule prevailing in other jurisdictions, the burden is clearly upon the plaintiff to show the reasonableness of the fee he now claims and to show that, at the time they executed the second document (Exhibit B), the defendant and her husband knew that the suggestion as to continuing the certificate in force had originated with the insurance company so that there was no substantial likelihood that a request for such continuation would be contested.

The plaintiff is, of course, entitled to just compensation for his services. The fact that the clients were unable to pay at the time the services were rendered and, consequently, it was agreed that payment would be deferred until the death of the certificate holder must be taken into account in determining the amount which reasonably may be awarded to the plaintiff for the services rendered by him, but it is only a circumstance so to be considered.

The judgment of the Court of Appeals is, therefore, reversed and the matter is remanded to that court for the entry of an order further remanding it to the District Court for further proceedings therein not inconsistent with this opinion.

REVERSED AND REMANDED.