In re James O. JOHNSON, Delores N. Johnson, Debtors.

**FINANCEAMERICA CORPORATION, Movant,**

v.

**James O. JOHNSON, Delores N. Johnson, Thomas Lackey, Trustee, Respondents.**

Bankruptcy No. 84–A–1415. Motion No. 84–M–0838A.

United States Bankruptcy Court, D. Maryland, at Rockville.

Jan. 4, 1985.

Edward Cohn, Baltimore, Md., for FinanceAmerica Corp.

David Orandle, Baltimore, Md., for debtors.

Thomas Lackey, Upper Marlboro, Md., trustee in Chapter 13 case.

MEMORANDUM OF DECISION

(Motion to Terminate Stay)

PAUL MANNES, Bankruptcy Judge.

In this Chapter 13 proceeding, FinanceAmerica Corporation of Maryland (here-

inafter "FinanceAmerica") filed a motion seeking relief under § 362(d) from the automatic stay of § 362(a) to permit it to proceed with foreclosure on the deed of trust it held. The security is the debtors' home located on Lot 17, Section 2, of the King Kennedy Estates near Leonardtown, St. Mary's County, Maryland. The debtors, James O. Johnson and Delores N. Johnson, oppose the granting of relief. The Chapter 13 trustee has no interest in the outcome of this proceeding.

FACTS—Sometime in late 1979, a representative of a siding company, presumably the B & D Building & Supply Co. (hereinafter "B & D"), entered into a contract with the debtors for the installation of siding on their home, the subject property. The debtors may have executed a note,[1] and the debtors did execute a deed of trust securing B & D. The trust property was debtors' home and the amount secured was $4,265.40, payable in 60 monthly installments of $71.09. The date of the deed of trust was December 19, 1979, the date of acknowledgment was January 3, 1980, and the date of recordation in the land records of St. Mary's County was January 31, 1980, at liber 064, folio 124. In the same liber at folio 127 appears a "Short Assignment of Mortgage or Deed of Trust" from B & D to National Associates, Inc. Finally, National Associates, Inc. assigned the contract without recourse to FinanceAmerica. The amount advanced by FinanceAmerica to National Associates, Inc. was $2,800.

FinanceAmerica's account records for Mr. Johnson, which were admitted into evidence at trial, reflect that he made payments on the note totalling $3,278.28 between February 28, 1980, and July 26, 1984. The records further reflect that a total of $3,118.71 of that amount was applied against the $4,265.40 note, which would leave a balance of $1,146.69.[2] In addition to the account balance, FinanceAmerica is claiming collection and foreclosure expenses in the neighborhood of $2,000.[3]

■ FinanceAmerica foreclosed on the debtors' home after the filing of the Chapter 13 petition and the knockdown price at this void proceeding was in excess of $20,000, subject to a first trust owing to the Farmers Home Administration (hereinafter "Farmers Home") in the amount of $13,104.44. There is no dispute that there is sufficient equity to protect FinanceAmerica. It admits that the property is worth at least $20,000. Mr. Johnson testified that the property is worth in the range of $30–35,000, and the court finds his testimony credible in the lower range of that estimate. The movant therefore has not satisfied its burden of proving that there is a lack of equity.

■ Mr. Johnson is and has been a farm worker for 21 or 22 years. He has occupied the home for the last ten years and, for the first time this year, was permitted by his employer to sharecrop six acres of tobacco. The tobacco has been cut and is now in the employer's barn curing and aging. The tobacco will be sold at the March or April, 1985, auctions. The debtor believes from his many years of farm experience that he has a good crop and that his share of the proceeds will be $5,000. Meanwhile, he is resuming his payments to Farmers Home, and Farmers Home has not

1. A copy of the note was not offered in evidence.

2. It appears that the amount which did not go toward paying off the note, $159.57, represents late charges, most of which Mr. Johnson was doomed to incur as a result of FinanceAmerica's casual bookkeeping and indifference to the account.

3. The court has labored in futility to reconcile the evidence on the amount of FinanceAmerica's claim. FinanceAmerica's account records show a "bottom line" loan balance of $1,062.61. Mr. Jordan, manager of the office which handled Mr. Johnson's account, testified that the loan balance was $1,110.63 and collection expenses were $1,929.00. FinanceAmerica's proof of claim lists a loan balance of $873.44 and foreclosure expenses of $2,066.61. For the purposes of this decision, any of the figures could be used. The court makes no finding at this time whether the expenses are reasonable. *Compare* 11 U.S.C. § 506(b) with *Tucker v. Dudley,* 223 Md. 467, 164 A.2d 891, 895–96 (1960).

disturbed him with respect to any delinquency that he may have on the first mortgage. Indeed, he has been cautioned by that agency to avoid further encumbrances that might cause him to lose his home.

Acting on his own counsel, Mr. Johnson had worked to pay off an unsecured creditor, the U.S. Life Credit Company, rather than pay this particular movant. The debtor was uneducated and ill-advised in the fundamentals of bankruptcy and finance law. He lives with his wife, his mother, his son, two daughters, and one grandchild in the home that FinanceAmerica seeks to sell to pay its claim. It is self-evident that it is necessary to Mr. Johnson's personal reorganization to save the family home, to keep the family together, and to avoid the ruinous expense incurred in attempting to find a new place to live. While the plan that was originally filed reflected the sale of his home, Mr. Johnson expressly denounced that plan for good reason. Were he to sell the home, he would be unable to apply the equity on new housing in any way whereby he would have the stability for his family that he has today.

Debtors' first deed of trust note involves a payment of $120.00 per month, and the second deed of trust note is the one at hand. If the payments are made as scheduled on the second note, the obligation will be paid off in slightly more than a year. Debtors have equity in the subject property. In the present circumstances, there is such a degree of equity that that alone in this rare circumstance would provide more than adequate protection for the creditor during the pendency of this Chapter 13.

The need for a family residence in an effective reorganization was dealt with succinctly in the opinion of the District Court in *In re Garner*, 18 B.R. 369, 371 (D.C.S.D. N.Y.1982). In reviewing the bankruptcy court's decision, the District Court said:

The court also found as a matter of fact that the debtors' "main objective in this Chapter 13 case is to save their home." It is undoubtedly "necessary to an effective reorganization" to maintain the stay and prevent foreclosure where the main

objective of the proceeding is to save the home, "at least until the confirmation hearing, at which time it will be determined whether or not [the debtors'] financial position and their budgeted expenses will justify a confirmation."

*Id.* at 371.

With respect to the debtors' equity serving as adequate protection for a period of time, the 9th Circuit stated recently in the case of *In re Mellor*, 734 F.2d 1396 (9th Cir.1984):

The [debtors] contend that the sellers are adequately protected by an "equity cushion."[2] Although the existence of an equity cushion as a method of adequate protection is not specifically mentioned in § 361, it is the classic form of protection for a secured debt justifying the restraint of lien enforcement by a bankruptcy court. *In re Curtis*, 9 B.R. [110] at 112 [(Bkrtcy.1981)]. In fact, it has been held that the existence of an equity cushion, standing alone, can provide adequate protection. *In re San Clemente Estates*, 5 B.R. 605, 610 (B.Ct.S.D.Cal. 1980); *In re Tucker*, 5 B.R. 180, 182 (B.Ct.S.D.N.Y.1980); 2 Collier on Bankruptcy, § 361.02[3] at 361–9; (15th ed. 1979). A sufficient equity cushion has been found to exist although not a single mortgage payment had been made. *In re Curtis*, 9 B.R. at 111.

[2] "Equity cushion" has been defined as the value in the property, above the amount owed to the creditor with a secured claim, that will shield that interest from loss due to any decrease in the value of the property during time the automatic stay remains in effect. *In re Roane*, 8 B.R. 997, 1000 (B.Ct.E.D.Pa.1981), *aff'd*, 14 B.R. 542 (D.C.E.D.Pa.1981). "Equity," as opposed to "equity cushion," is the value, above all secured claims against the property, that can be realized from the sale of the property for the benefit of the unsecured creditors. *La Jolla Mortgage Fund*, 18 B.R. at 287.

*In re Mellor*, 734 F.2d at 1400. The Mellor court concluded that there was adequate protection for the secured interest in that the value of the debtor's estate afforded the secured creditors an adequate "equity cushion."

In conclusion, this court notes that the debtors have not helped their situation. They came very close to losing their home by losing touch with counsel, by not making arrangements to contact counsel in view of the fact that they have no telephone, and because of their delay in an earlier Chapter 13 proceeding to process the necessary paperwork. On the other hand, the most remarkable aspect of this foreclosure is the picture of the FinanceAmerica officials sitting in their offices willing to sell out this farm family for $1,100. The movant's motion will be denied.

An order will be entered in accordance with the foregoing.